[Civ. No. 5149. Fifth Dist. July 13, 1982.]

MICHAEL W. BAKER, a Minor, etc., Plaintiff and Appellant, v. WALKER & WALKER, INC., et al., Defendants and Respondents.

[Civ. No. 5873. Fifth Dist. July 13, 1982.]

MICHAEL W. BAKER, a Minor, etc., Plaintiff and Appellant, v. JAMES P. LOCKETT et al., Defendants and Respondents.

[Civ. No. 6179. Fifth Dist. July 13, 1982.]

MICHAEL W. BAKER, a Minor, etc., Plaintiff and Appellant, v. TELEDYNE, INC., et al., Defendants and Respondents.

748

**COUNSEL**

Canelo, Hansen & Wilson, James H. Wilson and Leonard Herr for Plaintiff and Appellant.

Parichan, Renberg, Crossman & Harvey, Richard C. Crossman, John K. Ormond, Silveira, Garrett, Goul & Curry, Silveira, Garrett, Goul,

Cunny & Mattos, William L. Garrett, Meheen & Menken, John F. Menken, M. Michael Meheen, Ericksen, Arbuthnot, McCarthy & Kearney, Frederick T. Kearney, Owen, Melbye & Rohlff, James Michael Allen and Edmund Scott for Defendants and Respondents.

OPINION

HANSON (P. D.), J.—These consolidated appeals arise out of an action for damages for the wrongful death of Helen Baker, the mother of Michael W. Baker who was five years old when his mother died on March 2, 1973.[1]

On November 2, 1976, a complaint for wrongful death was filed in the Merced County Superior Court against the various respondents.

After numerous demurrers and answers were filed, together with points and authorities, appellant filed a first amended complaint on March 15, 1977, alleging the following facts.

The "Civic Center Professional Building," a commercial office building located at 550 West 22nd Street in Merced, California, was completed on March 15, 1963. Respondent Lockett, the architect, designed and supervised the erection of the building; respondent Walker, the general contractor, constructed the building; respondent Johnny's Plumbing, the subcontractor, installed the heating and air-conditioning systems; respondent Teledyne/Laars manufactured and supplied the heating unit; and respondent Trane manufactured and supplied the air-conditioning unit.

Between March 15, 1963, and March 2, 1973, the air-conditioning and heating units in the building did not work properly, even though efforts were made by respondents Walker, Lockett and Johnny's to repair the units. Many areas of the building could not be heated or cooled adequately. During the period of December 1972 through February 1973, the temperature in the building fluctuated between 53 degrees and 88 degrees. Many tenants and occupants of the building contracted colds. Appellant's mother, Helen Baker, a legal secretary employed in the

[1]Michael Baker's father, Jack Baker, was appointed guardian ad litem on November 2, 1976, for purposes of prosecuting the action, and upon Jack Baker's death on February 14, 1980, Ellis Jones was appointed the minor's guardian ad litem.

building, contracted pneumonia in December of 1972 and died on March 2, 1973. Her death was a direct and proximate result of the faulty performance of the heating and air-conditioning units.

In seeking to hold the respondents Walker, Lockett and Johnny's liable for the death of his mother, appellant, under different theories, sued essentially for failure to repair and to eliminate the problems in the operation of the heating and cooling systems after being given notice of their malfunctioning. In addition, respondents Teledyne/Laars and Trane were sued on grounds of products liability and negligent manufacture; it was alleged as to all respondents that the deficiency was latent.

Most of the causes of action pleaded in the first amended complaint are not in issue here; the causes which are the subjects of the various appeals are the first cause of action which alleged that respondents Walker, Lockett and Johnny's were responsible for the malfunctions and nonfunctions in the heating and cooling systems which they were unable to repair; the sixth cause of action which alleged products liability, charging respondents Teledyne/Laars with manufacturing a defective heating unit and Trane with manufacturing a defective air conditioning unit; the seventh cause of action which alleged that Teledyne/Laars and Trane negligently manufactured their respective units; and the ninth cause of action which alleged that all respondents were liable for the latent defect, which was still not discoverable or apparent by reasonable inspection.

Demurrers were filed by the respondents alleging that appellant's action was barred by the provisions of Code of Civil Procedure sections 337.1 and 337.15. The essence of the various demurrers was that the pleadings clearly showed a *patent* deficiency in that the parties were aware of the malfunctioning of the units and therefore, count one was barred by Code of Civil Procedure section 337.1, that although the ninth cause of action pleaded a *latent* deficiency, the facts alleged in the first cause of action did not support a latent deficiency, and therefore the labeling of the ninth cause of action was a mere conclusion which was impossible to sustain under the law and was contrary to facts of which judicial notice could be taken.[2]

---

[2]See 4 Witkin, California Procedure (2d ed. 1971) Proceedings Without Trial, section 162, pages 2817-2818.

Judge Murry ruled on May 24, 1977, that Code of Civil Procedure section 337.1, denied equal protection of the law in that the statute barred a cause of action for wrongful death, caused by a *patent* defect, when, as in this case, the death occurred more than five years after the improvement had been constructed, and a companion statute, Code of Civil Procedure section 337.15, established no limitation, dating back to the time of construction, on a wrongful death action arising from a latent defect and overruled the demurrers as to the first and ninth causes of action.[3]

Motions for judgment on the pleadings were filed by the respondents at different times; later motions incorporated the arguments included in prior motions. The motions alleged the same grounds as the demurrers originally filed and directed the court's attention to three cases[4] decided after the filing of Judge Murry's ruling in which either Code of Civil Procedure section 337.1 or 337.15 was held to be constitutional.

The various motions for judgment on the pleadings were granted on the basis that the deficiency in the building was "patent," the building was substantially completed more than four years prior to the death of appellant's mother and therefore the complaint was barred by the four-year statute of limitations. (Code Civ. Proc., § 337.1.) The instant appeals followed.

## DISCUSSION

## I

### Manufacturers and Suppliers

Appellant contends that Code of Civil Procedure section 337.1 does not apply to respondents Teledyne/Laars and Trane because they were the manufacturers of the heating and cooling units and not the improvers of real property within the meaning of the statute. We agree.

---

[3]The judge sustained demurrers with leave to amend on other causes of action not in issue here. Appellant did not take further action regarding those counts. Subsequently, counts three, four, five and eight were dismissed as to respondents Johnny's and Walker.

[4]*Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal 3d 624.3d 624 [147 Cal.Rptr. 486, 581 P.2d 197]; *Wagner* v. *State of California* (1978) 86 Cal.App.3d 922 [150 Cal.Rptr. 489]; *Eden* v. *Van Tine* (1978) 83 Cal.App. 3d 879 [148 Cal.Rptr. 215, 12 A.L.R.4th 856].

Code of Civil Procedure section 337.1 provides as follows: "(a) Except as otherwise provided in this section, no action shall be brought to recover damages from any person performing or furnishing the design, specifications, surveying, planning, supervision or observation of construction or construction of an *improvement to real property more than four years* after the substantial completion of such improvement for any of the following:

"(1) *Any patent deficiency* in the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to, or survey of, real property;

"(2) Injury to property, real or personal, arising out of any such patent deficiency; or

"(3) Injury to the person or for wrongful death arising out of any such patent deficiency.

"(b) If, by reason of such *patent deficiency*, an injury to property or the person or an injury causing wrongful death occurs during the fourth year after such substantial completion, an action in tort to recover damages for such an injury or wrongful death may be brought within one year after the date on which such injury occurred, irrespective of the date of death, but in no event may such an action be brought more than five years after the substantial completion of construction of such improvement.

"(c) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action.

"(d) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring an action.

"(e) As used in this section, '*patent deficiency*' *means a deficiency which is apparent by reasonable inspection.*

"(f) Subdivisions (a) and (b) shall *not apply to any owner-occupied single-unit residence.*" (Italics added.)

A companion statute, Code of Civil Procedure section 337.15[5] contains essentially the same language, but by its terms clearly does not apply to personal injury or wrongful death actions;[6] it involves a latent deficiency and a ten-year limitation and reads in pertinent part: "(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an *improvement to real property more than 10 years* after the substantial completion of the development or improvement for any of the following:

"(1) *Any latent deficiency* in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property.

"(2) Injury to property, real or personal, arising out of any such latent deficiency.

"(b) As used in this section, *'latent deficiency' means a deficiency which is not apparent by reasonable inspection.*

". . . . . . . . . . . . . .

"(g) The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs:

"(1) The date of final inspection by the applicable public agency.

"(2) The date of recordation of a valid notice of completion.

"(3) The date of use or occupation of the improvement.

"(4) One year after termination or cessation of work on the improvement.

"The date of substantial completion shall relate specifically to the performance or furnishing design, specifications, surveying, planning,

---

[5]Except as otherwise noted, all statutory references are to the Code of Civil Procedure.

[6]See Justice Reynoso's discussion in his dissenting opinion of *Wagner* v. *State of California* (1978) 86 Cal.App.3d 922 [150 Cal.Rptr. 489].)

supervision, testing, observation of construction or construction services by each profession or trade rendering services to the improvement." (Italics added.)

These two statutes have been construed by the courts as constituting one prong of a two-step statute of limitations. *Regents of University of California v. Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 640-641 [147 Cal.Rptr. 486, 581 P.2d 197], held that section 337.15 is an "ordinary procedural statute of limitations," and stated that under certain circumstances "the Legislature has responded by enacting statutes of limitation which require suit to be filed within the shorter of two periods, one measured *from the date of discovery* and a second, *longer period measured from the event giving rise to the cause of action.*" (Italics added.) *Anderson v. Brouwer* (1979) 99 Cal.App.3d 176, 180, footnote 1 [160 Cal.Rptr. 65], recognized in dicta, that the language in section 337.1, except for the *four*-year period of limitations and the *patent* deficiency, in pertinent part, is otherwise identical to that in section 337.15.[7]

■ Initially, and contrary to the allegations of respondents Teledyne/Laars and Trane, we hold that appellant has not waived his right to raise on appeal the issue of whether the statute applies to manufacturers and suppliers of the heating and air-conditioning units. Appellant specifically argued in his points and authorities in opposition to respondent Trane's demurrer that section 337.1 did not apply to manufacturers or suppliers of defective goods. The demurrer was overruled. In his motion for judgment on the pleadings, respondent Trane incorporated the entire file. At argument on the motion, appellant stated that he could not add anything to the pleadings. Obviously, the issue was before the court and certainly the argument as it applied to Trane was preserved.

Appellant opposed Teledyne/Laars' motion for judgment on the pleadings by incorporating his opposition to respondent Johnny's motion. As the manufacturers and suppliers issue was not pertinent to respondent Johnny's motion, appellant's opposition pleadings did not include the appropriate response. However, as appellant submits, issues of law presented on facts not in dispute may be raised for the first time on appeal. (6 Witkin, Cal. Procedure (2d ed. 1971), Appeal, § 288,

---

[7]As section 337.15 does not apply to this wrongful death action, the statute is mentioned only for purposes of discussion in analyzing the holdings of the various cases.

p. 4275; *Burdette* v. *Rollefson Construction Co.* (1959) 52 Cal.2d 720, 725-726 [344 P.2d 307].) In these appeals from judgments on the pleadings, the factual allegations in the complaint must be accepted as true. (*Gill* v. *Curtis Publishing Co.* (1952) 38 Cal.2d 273, 275 [239 P.2d 630].)

In *Burdette* v. *Rollefson, supra,* 52 Cal.2d 720, involving an appeal in an action for personal injuries sustained in a fall to a public sidewalk, the plaintiff contended that a different section of the city's building code applied to the agreed-upon facts. The defendant objected that such a contention permitted plaintiff to urge a new theory on appeal. The California Supreme Court stated: "This contention is without merit. Although ordinarily a party may not deprive his opponent of an opportunity to meet an issue in the trial court by changing his theory on appeal, this rule does not apply when, as in this case, the facts are not disputed and the party merely raises a new question of law." (*Id.,* pp. 725-726.)

The authorities cited by respondents are not applicable to this issue of appellate review. In *Glendale Unified School Dist.* v. *Vista Del Rossmoyne Co.* (1965) 232 Cal.App.2d 493 [42 Cal.Rptr. 899], the court was asked to apply a *new* theory based upon *speculative* facts. In *State Comp. Ins. Fund* v. *Maloney* (1953) 121 Cal.App.2d 33 [262 P.2d 662], the appellant unsuccessfully sought an appellate court determination that the trial court was in error in failing to enjoin one of two administrative rulings; such order was not requested of the trial court as to that particular administrative ruling. These cases obviously are distinguishable.

The applicability of the relevant limitation statute to respondent, Teledyne/Laars, is an issue of law, and therefore we address the substantive issue as to both respondents, Trane and Teledyne/Laars.

■ A manufacturer of goods ultimately installed in an improvement to real property cannot avail himself of the protections of the relevant code section. In enacting the statute, the Legislature clearly intended to protect contractors, who are in the business of constructing improvements and must devote their capital to that purpose, from never-ending liability. (*Regents of University of California* v. *Hartford Acc. & Indem. Co., supra,* 21 Cal.3d 624, 633, fn. 2.) The statute by its language limits the action to persons "*performing or furnishing the design, specifications, surveying, planning, supervision or observation of*

*construction or construction of an improvement to real property."* This language does not include the manufacturing or supplying of products which are installed in the improvement. "'[W]ords in a statute should be given their ordinary meaning and receive a sensible construction in accord with the commonly understood meaning thereof.'" (*Gawzner Corp.* v. *Minier* (1975) 46 Cal.App.3d 777, 783 [120 Cal.Rptr. 344, 80 A.L.R.3d 726].)

A similar issue was presented in *Sevilla* v. *Stearns-Roger, Inc.* (1980) 101 Cal.App.3d 608 [161 Cal.Rptr. 700]. An employee was injured while repairing a "pan" used to boil sugar in his employer's sugar refinery. The employee sued the designer and manufacturer of the "pan" on a theory of products liability. The defendants' motion for summary judgment was granted on the basis of code sections 337.1 and 337.15.

In reversing the ruling, the appellate court stated: "The Legislature has enacted statutes which provide a final point of termination, to protect some groups from extended liability. Sections 337.1 and 337.15 provide such a limitation on actions for *design or construction defects in improvements to real property.* [Citation.]

"Defendants assert this limitation should be invoked to cut off Sevilla's action because their 'pan' was ultimately installed in a sugar refinery. By this simple fact, defendants claim, a 'product' was transformed to an 'improvement of real property.' The effect of such a transformation would severely limit the development of products liability law and bestow this statutory protection on manufacturers of alleged defective products. There has been no indication the state Legislature sought to protect this group from liability. Nor has any appellate court applied these statutes in the area of products liability. Statutorily imposed limitations on actions are technical defenses which should be strictly construed to avoid the forfeiture of a plaintiff's rights [citation]. Such limitations are obstacles to just claims and the courts may not indulge in a strained construction to apply these statutes to the facts of a particular case [citations]. Any doubt as to whether summary disposition is proper must be resolved against the moving parties [citation]. The trial court erred in stretching sections 337.1 and 337.15 to include the defendants in this case. (*Id.,* at p. 611; fn. omitted; italics added.)

The *policy* of protecting the public from dangerous and defective products and the effect on that policy of the protection provided by the

Legislature to some groups as discussed in *Sevilla* must be examined in each situation:[8] ■■■ The manufacturing of a "unit" to heat or cool is the *function* of *providing* a product; there is no indication such a function was intended to be within the protective blanket of the statute. "[S]uch a transformation would severely limit the development of products liability law and bestow the statutory protection on manufacturers of alleged defective products." (*Id.*, at p. 611.)

We are not persuaded by respondent Teledyne/Laars' contention that it did in fact participate in the design, specifications, etc., of an improvement to real property. Viewing the pleadings in a common sense manner, respondent Teledyne/Laars *did not participate in the design* within the meaning of the statute. Furthermore, any such participation should not preclude respondent Teledyne/Laars from being held liable on a theory of products liability.

These respondents, manufacturers and suppliers of the heating-cooling systems used in constructing the building, cannot claim the protection of the statute under these pleadings.

## II

### *The Latent Deficiency*

The facts as taken from the first amended complaint relevant to the issue of whether a latent or patent deficiency was pleaded, are these. The building was completed on March 15, 1963, and the heating and air-conditioning systems were designed improperly. Shortly after completion of the building, the units failed to work as they should. These malfunctions and nonfunctions were brought to the attention of various respondents, including Walker, Johnny's, Lockett, and others. Over a period of 14 years these respondents could not pinpoint the cause of the malfunctions and therefore the problem could not be remedied. Because of the units' faulty operation, the system could not regulate the temperature in the building adequately and safely. Rooms were not heated or cooled properly, or were not heated or cooled at all. The temperature fluctuated between 53 degrees and 88 degrees during the period of December 1972 through February 1973. As a direct result, the decedent developed pneumonia and died.

---

[8]We note the *Sevilla* case was not final at the time Judge Barrett ruled in favor of respondents on this issue.

■ "The motion for judgment on the pleadings performs the function of a general demurrer. Therefore, it '"admits all material and issuable facts pleaded."' (*Colberg, Inc. v. State of California* ex rel. *Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 412 [62 Cal.Rptr. 401, 432 P.2d 3.)" (*Baillargeon v. Department of Water & Power* (1977) 69 Cal.App.3d 670, 676 [138 Cal.Rptr. 338].)

■ Appellant contends that the deficiency was "latent," arguing that the *cause* of the problem was never determined and therefore the statute limiting wrongful death actions for "patent" deficiencies to four years does not apply to this action. We agree that the deficiency was a latent one and that section 337.1 is not applicable.

While the effects of the deficiency were obvious to the decedent in that she knew that the building was always too hot or too cold and subject to great temperature variations, she could not identify the deficiency itself; it was unknown. And over a period of 14 years the deficiency had not been identified by anyone. Because section 337.1 requires the deficiency if patent to be "apparent by reasonable inspection," and in the instant case under the pleaded facts the *source* of the death-causing temperature variation had never been determined, appellant analogizes with good reason that the deficiency necessarily was a latent one.

The various respondents argue that the deficiency was "patent" in that the decedent was aware of the temperature fluctuations and any characterization of cause and effect is irrelevant; that the facts as alleged in the first amended complaint clearly show that the deficiency was "patent"; that the fact of being *aware* of the manifestations is sufficient to constitute a "patent deficiency"; and thus the bar of section 337.1 must apply.

The courts, without addressing this issue, have simply characterized different deficiencies as latent or patent and some cases have impliedly recognized the difficulty in that characterization.[9] In *Regents of Uni-*

---

[9]We use the term "deficiency" in the words of the statute, rather than "defect." Although respondents Walker and Johnny's contend that the two words have different meanings and seek support in a focus on the "correct" word, the courts have used the terms interchangeably. (See *Regents of University of California v. Hartford Acc. & Indem. Co., supra,* 21 Cal.3d 624; *Eden v. Van Tine, supra,* 83 Cal.App.3d 879; *Wagner v. State of California, supra,* 86 Cal.App.3d 922; *Anderson v. Brouwer, supra,* 99 Cal. App.3d 176; *Sevilla v. Stearns-Roger, Inc., supra,* 101 Cal.App.3d 608; *Liptak v. Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762 [167 Cal.Rptr. 440].) These cases,

*versity of California* v. *Hartford Acc. & Indem. Co., supra*, 21 Cal.3d 624, the court *assumed,* for sake of analysis, that dry rot in the balconies and supporting structures of a building was a latent defect. In *Eden* v. *Van Tine* (1978) 83 Cal.App.3d 879 [148 Cal.Rptr. 215, 12 A.L.R.4th 856], the latent defect involved was a soil engineering problem which caused a wall to fall. This court, in *Anderson* v. *Brouwer, supra,* 99 Cal.App.3d 176, 181, *assumed* that ruts on a floor in an office building were latent defects. In *Liptak* v. *Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762 [167 Cal.Rptr. 440], the court found that improper earth grading which damaged a house was a latent defect.

Other deficiencies have been recognized as patent. The court in *Wagner* v. *State of California, supra,* 86 Cal.App.3d 922 *assumed* that a negligently designed intersection was a patent deficiency. The dissent, however, argued that nothing in the complaint established that the defect was in fact patent. The court in *Salinero* v. *Pon* (1981) 124 Cal.App.3d 120 [177 Cal.Rptr. 204] also *assumed* that the lack of safety devices for window washers on a building was a patent deficiency.

We point out that the courts in these cases did not address the specific issue with which we are concerned, but discussed other problems such as constitutionality or retroactivity.

Section 337.1 provides in relevant part that no wrongful death action arising out of "(1) any patent deficiency in the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to, or survey of, real property; . . ." shall be brought more than four years after substantial completion of the structure. The statute defines a "patent deficiency": "(e) As used in this section, 'patent deficiency' means a deficiency which is apparent by reasonable inspection."

In *Wagner* v. *State of California, supra,* 86 Cal.App.3d 922, the appellant alleged that the respondents were negligent in the design, planning, construction, maintenance and posting of an intersection and, as a result, an accident occurred subjecting appellant to liability for damages. The trial court sustained the respondent's demurrer on the ground that the action was barred by section 337.1. The appellate court

---

however, were not faced with the latent/patent choice issue. Addressing the issue in *Mattingly* v. *Anthony Industries, Inc.* (1980) 109 Cal.App.3d 506 [167 Cal.Rptr. 292], the court used the word "deficiency" without reference to the word "defect." According to dictionary definition the words are virtually interchangeable.

affirmed the trial court's ruling. However, as appellant notes, the court impliedly recognized that the deficiency may have been latent: "Wagner did not allege a latent defect, nor otherwise seek in the cross-complaint to remove the case factually from the purview of section 337.1. He did not claim a latent defect in his points and authorities before the trial court. In an opening brief, a closing brief, and a supplemental brief in this court, he has not argued that the claimed defect was latent, despite the statement in the Spink brief that 'Wagner has not disputed . . . that the defect, if it exists, would be a "patent" defect within the definition provided by section 337.1(e).'[3] He has never indicated an inclination to amend the cross-complaint. The cause of action asserted by Wagner therefore is controlled by section 337.1, and hence is barred. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 428, pp. 4394-4395.)"

This discussion, including footnote 3, indicates that although the "condition" may be patent, an inquiry should be made to determine whether the deficiency itself is "readily discoverable." The court, however, did not rule on the precise issue.

In *Eden v. Van Tine, supra*, 83 Cal.App.3d 879, a patio wall fell because of the instability of the supporting soil. The trial court found the problem to be patent and the action barred by both sections 337.1 and 337.15. The appellate court, for purposes of its decision, assumed that section 337.15 applied, but gave appellant additional time to file his complaint because the statute, if applied retroactively, did not permit reasonable time. The court impliedly distinguished cause and effect: "If the defect was truly latent, the fallen wall would not necessarily give notice to plaintiffs that it was a soil engineering problem. It would be notice to them that they should act quickly to discover its proximate cause. It then follows that a reasonable period of time must be allowed for this purpose." (*Id.*, at p. 887.) However, the distinction was made in the context of the retroactive application of the statute.

The issue of whether the absence of a fence around a swimming pool constituted a patent deficiency was addressed in *Mattingly v. Anthony Industries, Inc.* (1980) 109 Cal.App.3d 506 [167 Cal.Rptr. 292]. The court ruled that the test was an objective one, even when applied to an 18-month-old plaintiff who could not recognize the danger; the court stated that such a deficiency was obvious, even to the untrained eye and therefore it constituted a patent deficiency.

---

[3] "The undoubted reason for this is that the roadway condition is patent and any defect therein is readily discoverable." (*Id.* at p. 930.)

In determining the interpretation to be given a statute, the presumption exists that every word, phrase and provision employed in the statute is intended to have meaning. (*Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5].) Words in a statute should be given their ordinary meaning and receive a sensible construction. (*Gawzner Corp.* v. *Minier, supra,* 46 Cal.App.3d 777, 783.) "Words and phrases are construed according to the context and the approved usage of the language; . . ." (Civ. Code, § 13.)

The critical words in this discussion as defined by Webster's are: *Patent*: "To be open, be exposed, be evident . . . open to public inspection . . . open to view: readily visible or intelligible." (Webster's New Internat. Dict. (3d ed. 1961) p. 1654.) *Deficiency*: "The quality or state of being deficient." (Webster's New Internat. Dict. (3d ed. 1961) p. 592.) *Deficient*: "Lacking in some quality, faculty, or characteristic necessary for completeness . . . not up to a normal standard . . . needed to make up completeness." (Webster's New Internat. Dict. (3d ed. 1961) p. 592.)[10]

While knowledge of the severe and dangerous temperature fluctuations and malfunctions of the heating and cooling units in a building by one who works within the structure may indicate patent manifestations of a deficiency, we conclude that for purposes of section 337.1, the deficiency as described in the first amended complaint is a latent one and not "open" or "exposed," or "evident." The deficiency appears to fit the definition of latent: "Existing in hidden, dormant or repressed form." (Webster's New Internat. Dict. (3d ed. 1961) p. 1275.)

It is inconceivable that the protective statute was intended to apply to a case where it can be inferred that the decedent could not have found the deficiency by even *more* than a reasonable investigation when no one else, not architect, nor builder, nor plumber, was able to find it. The definition of "patent" deficiency contained in the statute surely never was intended to apply to facts such as are pleaded in this case.

---

[10]In reference to respondents' argument (see fn. 9), we note the definition of *defect* is very similar: "Want or absence of something necessary for completeness, perfection, or adequacy in form or function . . . to become deficient." (Websters, New Internat. Dict. (3d ed. 1961) p. 591.)

The obvious intent of the Legislature in passing the statute was to limit a developer's liability to four years from the date of completion of the structure whenever *by a reasonable inspection* the deficiency could be ascertained. Here, unlike the absent fence around the swimming pool in the *Mattingly* case, *supra*, the allegations in the pleadings show the *problem* could not be found by a reasonable inspection on the part of decedent or respondents. We find nothing in section 337.1 to indicate that the Legislature intended to limit absolutely a developer's liability within four years from completion of a structure where the victim of the *effect* of the dangerous deficiency cannot by any reasonable or by professional investigation determine what the disabling deficiency is.

Neither decedent nor the "average consumer" (*Mattingly* v. *Anthony Industries, Inc., supra*, 109 Cal.App.3d at p. 511) could be expected to solve the enigma of the heating-cooling dilemma; decedent's son should not be precluded from pursuing his action by an application of the term "patent" to a baffling and hidden deficiency, unapparent "by reasonable inspection." (§ 337.1, subd. (e).)

Because we conclude that the deficiency was latent, section 337.1 does not apply; the statute also does not apply to the manufacturers and suppliers of the products; we need not reach the constitutional issue argued by appellant.

The judgments in appeals 5149, 5873, and 6179 are reversed.

Zenovich, Acting P. J., and Conklin, J.,* concurred.

The petitions of respondents Johnny's Plumbing and Walker & Walker, Inc., for a hearing by the Supreme Court were denied September 8, 1982.

---

*Assigned by the Chairperson of the Judicial Council.