**Thedward HILLIARD,**
**Plaintiff–Appellant,**

v.

**LUMMUS COMPANY, INC.,**
**Defendant–Appellee.**

No. 86–2556.

United States Court of Appeals,
Seventh Circuit.

Argued April 14, 1987.

Decided Dec. 3, 1987.

Larry Karchmar, Larry Karchmar, Ltd., Chicago, Ill., for plaintiff-appellant.

Denise L. Jarrard, Isham, Lincoln & Beale, Chicago, Ill., for defendant-appellee.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff, Thedward Hilliard, brought this action against the defendant, Lummus Company, Inc. ("Lummus"), in the Circuit Court of Cook County, seeking damages for an injury sustained in an industrial accident. Lummus then removed the suit to the United States District Court for the Northern District of Illinois, pursuant to

the court's diversity jurisdiction. The dispute before the court requires us to interpret section 13–214(b) of the Illinois Code of Civil Procedure—the statute of limitations applicable to lawsuits brought against persons who have designed, planned, supervised, observed, or managed the construction of improvements to real property. *See* Ill.Rev.Stat. ch. 110, § 13–214(b) (1984). The district judge granted summary judgment in favor of Lummus, holding that Hilliard's suit was time-barred under section 13–214(b). The court held that the Lummus Co. had improved real property and was thus protected by the statute of limitations. *Hilliard v. U.S. Electrical Motors*, No. 85 C 7076, slip op. (N.D.Ill., Aug. 25, 1986). [Available on WESTLAW, DCT database]. Hilliard appeals. We affirm.

*FACTS*

In 1965, World's Finest Chocolates ("WFC") entered into a contract with Lummus to modernize the WFC cocoa-processing plant to prevent bacterial problems WFC had experienced with its existing equipment. The contract between WFC and Lummus required Lummus to provide "engineering and technical services ... in connection with a program of modifications to [WFC's] plant." Specifically, the contract directed that:

LUMMUS shall in accordance with the provisions of this Agreement perform or provide the following:

2.1  Engineering services including process, development, mechanical and structural design.

2.2  Drafting including layout and installation drawings.

2.3  Preparation of specifications and/or requisitions for subcontract and equipment.

2.4  Review all quotations received by OWNER and recommend supplier.

2.5  Check all vendors drawings and approve same for fabrication.

2.6  Prepare estimates of work to be performed as directed by OWNER.

2.7  Prepare progress reports on all phases of work.

2.8  Prepare schedules for engineering, procurement and construction.

2.9  Advise on installation and inspect all work.

2.10  Assist in plant start up and evaluation of process.

2.11  Furnish copies of all documents obtained in performance of the work from third parties.

Appendix 2–3, "Agreement Between Cook Chocolate Company and the Lummus Company for Engineering Services."[1] Lummus did not design, build, modify, or purchase any of the machinery in the WFC plant. Supp. Rec., Exh. E ¶ 6. Lummus characterizes its role as "the architect of the modernization of WFC's cocoa plant." Defendant's Brief at 4.

Hilliard was an employee of WFC. In 1981, Hilliard's right arm was severed above the elbow after he opened the cover of a screw conveyor that carried ground cocoa from a sterilizer to a pulverizing mill in WFC's plant. The screw conveyor that injured Hilliard was originally installed in about 1950 by someone other than Lummus. Supp. Rec., Exh. D at 38. During the modernization project, Lummus provided specifications to subcontractors and equipment vendors for modifying WFC's cocoa-processing equipment. Lummus's specifications were limited to describing the general requirements of each piece of equipment, leaving the specific equipment design in the hands of the subcontractors and vendors. Supp. Rec., "Deposition of Alfred Baum," 25–26. Among the equipment on which Lummus consulted with WFC were the screw conveyors that moved the cocoa through the WFC plant. The only change that Lummus suggested in the screw conveyors was the replacement of their carbon steel components (except the drive mechanisms and supports) with stainless steel components. Lummus did not do the work itself. Appellee's Supp. Appendix at 5–6.

In his complaint, Hilliard alleges that Lummus is liable for his injuries, grounding his allegations both in strict tort liabili-

---

**1.** WFC was named "Cook Chocolate Company"    when the contract was executed.

ty and in negligence. Following discovery, Lummus moved for summary judgment on the respective theories, pursuant to Fed.R. Civ.P. 56.

*THE TRIAL COURT'S DECISION*

The district court granted summary judgment in favor of Lummus on both the strict liability count and the negligence count. In granting summary judgment, the district court held that Hilliard's negligence claim was time-barred under section 13–214(b) of the Illinois Code of Civil Procedure. Section 13–214(b) provided that:

> No action based on tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 12 years have elapsed from the time of such act or omission. However, any person who discovers such act or omission prior to expiration of 12 years from the time of such act or omission shall in no event have less than 2 years to bring an action as provided in subsection (a) of this Section.

Ill.Rev.Stat. ch. 110, § 13–214(b) (1984).[2] Hilliard argued that the statute was inapplicable because Lummus had not participated in an improvement to real property, but had merely provided a product that was installed in real property. The court rejected that argument, holding that the screw conveyor substantially enhanced the value of WFC's property and, therefore, constituted an "improvement to real property." Thus, the Lummus Co. fell within the bounds of the statute's protection. *Hilliard,* No. 85 C 7076, slip op. at 7–9. We find that Lummus improved real property when it performed its services for WFC; therefore, we agree that section 13–214(b) applies to the Lummus Co. and we affirm the judgment of the district court.

*DISCUSSION*

■ The question whether Lummus's work on the screw conveyor constituted "an improvement to real property" within the meaning of section 13–214(b) is an issue of law for the court. *See Adair v. Koppers Co.,* 541 F.Supp. 1120, 1126 (N.D. Ohio 1982), *aff'd,* 741 F.2d 111, 114 (6th Cir.1984) (construing similar Ohio statute). To date, the Illinois Supreme Court has not interpreted the phrase "improvement to real property" in the statute, but the Illinois Appellate Court has recently interpreted the phrase in *Calumet Country Club v. Roberts Environmental Control Corp.,* 136 Ill.App.3d 610, 91 Ill.Dec. 267, 483 N.E. 2d 613 (1985). In *Calumet Country Club,* the court observed that a court interpreting a statute "primarily looks to the statute's actual words, which are given their commonly accepted meanings, unless otherwise defined by the legislature." *Id.* at 612–13, 91 Ill.Dec. at 269–70, 483 N.E.2d at 615–16 (citations omitted). Applying that principle to section 13–214(b), the court reasoned that "[a]n 'improvement' is an addition to real property amounting to more than a mere repair or replacement, and which substantially enhances the value of the property.... Improvements include buildings and substantial additions or changes to existing buildings." *Id.* at 613, 91 Ill.Dec. at 270, 483 N.E.2d at 616 (citations omitted).[3]

The approach of the court in *Calumet Country Club* resembles those taken by other courts in interpreting similar statutes

---

**2.** This section was amended in 1985, shortening the period of time which may elapse after the act or omission from twelve to ten years, but extending the time available for filing suit after discovery of the act or omission to four years. *See* Ill.Rev.Stat. ch. 110, § 13–214(b) (Supp. 1987), as amended by P.A. 84–551 (1985). The amendment does not affect this case.

**3.** Black's *Law Dictionary* defines an "improvement" as:

> A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally, buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset.

Black's *Law Dictionary* 682 (5th ed. 1979). The Illinois Appellate Court cited Black's definition in *Calumet Country Club,* 136 Ill.App.3d at 613, 91 Ill.Dec. at 270, 483 N.E.2d at 616.

of repose. *See, e.g., Adair,* 741 F.2d at 113–14; *Allentown Plaza Associates v. Suburban Propane Gas Corp.,* 43 Md.App. 337, 344–46, 405 A.2d 326, 331–32 (1979); *Jones v. Ohio Building Co.,* 4 Ohio Misc.2d 10, 11–12, 447 N.E.2d 776, 778–79 (1982); *Kallas Millwork Corp. v. Square D Co.,* 66 Wis.2d 382, 386, 225 N.W.2d 454, 456–57 (1975). This "commonsense" approach, focusing on the ordinary meaning of the statutory language, has been applied by a majority of the courts that have interpreted the phrase "improvement to real property." *Allentown Plaza Associates,* 43 Md.App. at 345, 405 A.2d at 331. *But cf. Smith v. Allen–Bradley Co.,* 371 F.Supp. 698 (W.D. Va.1974) (minority approach, applying common law of fixtures). We agree with the district court's reasoning that the Illinois Supreme Court might very well adopt the Illinois Appellate Court's approach in the *Calumet Country Club* decision. *See Hilliard,* No. 85 C 7076, slip op. at 7 (predicting "that the Illinois Supreme Court would adopt the *Calumet Country Club* court's interpretation of 'improvement' under § 13–214"). Thus, the question is whether Lummus designed, planned, managed, or supervised an addition to real property that was "more than a mere repair or replacement" of WFC's previously existing facilities, and thus substantially enhanced the value of the property when it advised WFC on the modernization of the WFC plant. *See Calumet Country Club,* 136 Ill.App.3d at 613, 91 Ill.Dec. at 270, 483 N.E.2d at 616.

Hilliard accepts this approach to the issue, but maintains that the screw conveyor is not an improvement to real property, but "is merely a piece of machinery." Plaintiff's Brief at 10. Hilliard emphasizes that the screw conveyor is an ordinary piece of equipment which is not particularly large and could easily be removed from the WFC plant premises without causing significant damage or loss of value to the plant itself. *Id.* at 11–14. The district court disposed of Hilliard's similar argument below as follows:

> That the conveyor is more than a mere repair or replacement is beyond dispute. The uncontested deposition testimony establishes that the conveyor was installed in about 1950 along with the construction of the building and has remained there ever since. The conveyor was not a repair to or a replacement of anything that previously existed. Furthermore, we do not think that it can seriously be doubted that the conveyor substantially enhanced the value of the property. The plant is designed to produce processed cocoa, and the conveyor was built as an integral component of that process.
>
> Hilliard does not dispute any of this, but rather contests only Lummus' assertion that the conveyor was bolted or welded to the concrete or steel supports.... Hilliard appears to be arguing that the conveyor is not a "fixture" and implies that this is a requirement for the application of § 13–214. We disagree. As we explained above, the words of a statute are to be given their common ordinary meaning unless the statute indicates otherwise. Nothing in § 13–214 indicates that it intended the peculiar definitions of fixture law to apply to that section.... If Hilliard's argument is intended to raise an issue as to the conveyor's permanence, we must disagree. Taken to its logical conclusion, Hilliard's argument would mean that nothing could be considered an "improvement to real property" if there were any possibility that the structure might be redesigned or rebuilt at any time, no matter how far into the future. We do not think this is a reasonable interpretation of the statutory language. We reiterate that the undisputed testimony shows that the original conveyor was installed in about 1950 and has been in place ever since. The testimony shows that Lummus did not replace the existing conveyor; the only recommendation allegedly made by Lummus was to replace one type of steel for another. In sum, we conclude that the conveyor constitutes an "improvement to real property" for purposes of § 13–214, and that § 13–214 therefore applies to bar Hilliard's negligence claim.

*Hilliard,* No. 85 C 7076, slip op. at 7–9 (citation omitted).

■ We agree with the district court's analysis, but we note another serious flaw in Hilliard's argument. As Lummus points out, Hilliard's focus on the screw conveyor alone ignores the true nature of the Lummus Co.'s work for WFC. Lummus did suggest improvements in the screw conveyor, but also directed a broad spectrum of improvements to the plant's cocoa-processing system. The appropriate inquiry is whether the whole of Lummus's work for WFC amounts to an improvement of real property. For example, in a case involving a plaintiff injured by a loose exterior brick, the question whether section 13–214(b) would apply to the architect of the building would not turn on whether the brick was an improvement to real property, but rather on whether the entire building was an improvement to real property.[4] *See* Ill. Rev.Stat. ch. 110, § 13–214(b).

At least three courts recently have emphasized that a court construing a similar statute of limitations should concentrate on the entire system involved rather than on a single component of the system. *See, e.g., Adair*, 741 F.2d at 114–15; *Cudahy Co. v. Ragnar Benson, Inc.*, 514 F.Supp. 1212, 1215–16 (D.Colo.1981); *Mullis v. Southern Company Services, Inc.*, 250 Ga. 90, 94, 296 S.E.2d 579, 584 (1982). For example, in *Mullis*, the plaintiff received a serious electrical shock while painting "bushing caps" on an air circuit breaker that was installed by the defendant as a part of an electrical system. The plaintiff contended that the air circuit breaker was not an improvement to real property, but the court disagreed. The court reasoned that:

> The issue is whether a component of a system which is definitely an improvement to real property is an improvement to real property itself. However, to artificially extract each component from an improvement to real property and view it in isolation would be an unrealistic and impractical method of determining what

is an improvement to real property. Frequently, as in this case, an improvement to real property is going to consist of a complex system of components.

> Consequently, we find that if a component is an essential or integral part of the improvement to which it belongs, then it is itself an improvement to real property.

*Mullis*, 250 Ga. at 94, 296 S.E.2d at 584. Similarly, in *Cudahy Co.*, the owner of a meat-packing plant sued the general contractor that had the responsibility of overseeing the construction of an addition to the plant. The plant's refrigeration system, which was designed by the contractor, had developed an ammonia leak that caused substantial damage to the plant and interrupted its operation. The court held that although the allegedly defective parts that caused the leak were small and interchangeable, the contractor was protected by Colorado's statute of repose. Since the parts were integral to the refrigeration system which in turn was essential to the overall function of the packing plant, the contractor had participated in an improvement to real property. *Cudahy Co.*, 514 F.Supp. at 1215–16.

The applicability of the above analysis to this case is highlighted in *Adair*, a case presenting a fact situation very similar to the one before us. *Adair*, 541 F.Supp. 1120, *aff'd*, 741 F.2d 111. In *Adair*, the plaintiff also was injured when his right arm was caught in a conveyor in the plant in which he worked. The plaintiff then sued the contractor that built the plant and the conveyor involved. While *Adair* involved a belt conveyor carrying coal and this case involves a screw conveyor carrying cocoa, the difference is hardly significant. The defendant contractor moved for summary judgment, relying on an Ohio statute of limitations similar to the Illinois statute before us.[5] The district court

---

4. This analogy is taken from Lummus's brief.

5. The Ohio statute provided, in relevant part: No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improve-

ment to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of

granted summary judgment, holding that the conveyor was "an integral component of an industrial system which is essential for the plant to serve the purpose for which it was designed." *Adair*, 541 F.Supp. at 1125. Therefore, the conveyor was an improvement to real property within the meaning of the statute. *Id.* On appeal, the Sixth Circuit echoed the district court's analysis. Citing both *Mullis* and *Cudahy Co.*, the appellate court held that because the conveyor was an integral part of the plant's coal-handling system, it constituted an improvement to real property within the meaning of the Ohio statute of repose. *Adair*, 741 F.2d at 114–16. Thus, the emphasis properly is placed on "the system rather than the component." *Id.* at 115 (analyzing *Mullis* ).

■ WFC hired Lummus to engineer and supervise a thorough modernization of WFC's cocoa-processing system. The screw conveyor that caused Hilliard's injuries was an integral part of that system and the system was central to the operation of the entire WFC plant. Just as the belt conveyor in *Adair* was necessary to move the coal through the various stages of processing, the screw conveyor involved here provided the necessary link between the sterilizer and the pulverizing mill. Thus, when we view Lummus's contract with WFC as a whole, we find that Lummus indeed was required to participate "in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property." Ill.Rev.Stat. ch. 110, § 13–214(b) (1984).

Hilliard cites two California cases, *Baker v. Walker & Walker, Inc.*, 133 Cal.App.3d 746, 184 Cal.Rptr. 245 (1982), and *Sevilla v. Stearns Roger, Inc.*, 101 Cal.App.3d 608, 161 Cal.Rptr. 700 (1980), to support his assertion that mere physical attachment of an item to real property does not make that item an improvement to real property. We agree with the holdings of those cases, but we do not agree that they support Hilli-

ard's position in this case. In both *Baker* and *Sevilla*, the plaintiffs sued the manufacturers of equipment that allegedly caused the plaintiffs to suffer personal injuries. In each case, the court specifically held that the equipment at issue was not an improvement to real property. However, a close reading of *Baker* and *Sevilla* reveals that the defendants in those cases were merely "manufacturer[s] of goods ultimately installed in an improvement to real property." *Baker*, 133 Cal.App.3d at 756, 184 Cal.Rptr. at 250; *see also Sevilla*, 101 Cal. App.3d at 611, 161 Cal.Rptr. at 702. From our review of *Baker* and *Sevilla*, we find no mention that the defendants in those cases participated in the design, planning or supervision of construction, or actual construction of more general improvements to the property involved. Each defendant's participation was limited to manufacturing a piece of equipment that later was installed on the real property involved.

Hilliard argues that, "[a]s in *Baker* and *Sevilla*, Lummus is simply a designer, manufacturer, or supplier of an alleged defective product which was installed in an improvement to real property." Pl. Br. at 19. This argument is without support in the record before us. Lummus planned, supervised, and managed the modernization of the WFC plant. Lummus did not manufacture the screw conveyors (or any other equipment) and its "design" function was limited to the provision of general specifications. Therefore, we find *Baker* and *Sevilla* inapplicable in the case before us.

In summary, WFC hired Lummus to plan, design, and supervise, as well as to oversee a broad range of substantial changes in its physical plant. Lummus's role was very similar to that of an architect or a general contractor. As required by the contract, Lummus provided engineering, drafting, equipment specifications, estimates, progress reports, and similar services. Lummus did not manufacture the screw conveyor that caused Hilliard's inju-

such improvement to real property, more than ten years after the performance or furnishing or such services and construction.

Ohio Rev. Code Ann. § 2305.131 (Anderson 1981 & Supp. 1986).

ry, nor did it design or procure the conveyor for WFC. Lummus's sole connection with the screw conveyor was its suggestion that the conveyor's carbon steel components be replaced by stainless steel. Therefore, we agree with the district court's conclusion that Lummus's role in the modernization of the WFC plant falls well within the language of section 13–214(b).[6]

The district court's decision granting summary judgment in favor of Lummus is affirmed.

---

**6.** Alternatively, Hilliard argues:

that the Illinois Legislature enacted Section 13–214(b) of the Illinois Code of Civil Procedure in order to expressly protect architectural engineering firms, and real estate general contractors and subcontractors from extended tort liability. This statute protects certain well-defined groups from indefinite liability. Lummus, however, is not an architectural engineering firm or a real estate general construction contractor or subcontractor, and therefore, does not fall within the class of persons the Illinois Legislature intended to protect.

Pl. Br. at 14. However, section 13–214 "does not exclude persons based upon their status. It protects, on its face, anyone who engages in the enumerated *activities.*" *Skinner v. Hellmuth, Obata & Kassabaum, Inc.,* 114 Ill.2d 252, 261, 102 Ill.Dec. 412, 415, 500 N.E.2d 34, 37 (1986) (emphasis in original). Because we have found that Lummus engaged in the protected activities, Lummus is within the protected class. Mere labels are not dispositive.