AUDRA KAMP, Plaintiff-Appellee, v. WILLIAM J. PREIS, Defendant-Appellant.

Fifth District  No. 5—01—0598

Opinion filed August 6, 2002.—Rehearing denied September 5, 2002.

Stephen W. Thomson, Dayna L. Johnson, and Nancy Quackenbush, all of Thomson Law Offices, of Edwardsville, for appellant.

Joseph E. Hoefert, of Hoefert & Perica, P.C., of Alton, for appellee.

JUSTICE KUEHN delivered the opinion of the court:

The defendant, William J. Preis, appeals from the trial court's June 21, 2001, denial of his posttrial motion for a judgment notwithstanding the verdict or, alternatively, for a new trial.

## I. FACTS

Michael Meehan was a student at Lewis and Clark Community College and rented an apartment in Godfrey, Illinois, from William J. Preis. The apartment was owned by Preis and his wife, although the lease indicated that the owner was Preis Home Construction, Inc., of which Preis is president.

The apartment building is what is commonly known as a quad-plex—a building containing four residential units. Preis's construction company was responsible for building the particular quadplex occupied by Michael Meehan, as well as 63 others in the complex where Michael Meehan's building was located. Ownership of the other 63 apartment buildings is not known because that detail was not included in the record.

Michael Meehan's apartment was one of two upstairs apartments. The two upstairs apartments share a deck that is 20 feet long and 10 feet wide and separated in the middle by a wooden divider. Apparently, all of the other apartment buildings in the complex are similarly constructed. Each deck is secured to its building by a wooden ledger board. The ledger boards were attached to the buildings at the joists by 30 pole-barn nails. The nails utilized in the deck constructed at Michael Meehan's apartment were ungalvanized. Ungalvanized nails can rust. Some of the other decks constructed by Preis Home Construction, Inc., included galvanized nails.

On May 15, 1998, Audra Kamp attended a party hosted by Michael Meehan in his Godfrey apartment. The party was well-attended, with approximately 60 people in the apartment. The partygoers were also on the deck. About 11 p.m., Kamp and an estimated 35 to 40 other people were standing on this deck, when the deck suddenly collapsed. Kamp and the others fell 15 feet to the ground below. Kamp's right leg was severely injured in the accident. Her leg was three-fifths severed, with a fractured tibia and fibula. The fracture was designated as a grade III and open, meaning that it was the worst type of fracture, with the bone exposed to the environment. She was initially seen on May 16, 1998, at an Alton hospital emergency room by an orthopedic

surgeon, who performed an open reduction and internal fixation by inserting a seven-inch plate with seven screws in Kamp's leg. The surgeon, Dr. J.E. Stirnaman, was reluctant to close the wound for fear of infection. He loosely closed the wound with nylon sutures and placed drains in the leg. Thereafter, on May 18, 1998, she underwent a second surgery, at which time Dr. Stirnaman removed the sutures, irrigated the wound, debrided it of necrotic-looking tissue, and closed the wound.

Following the two surgeries, Kamp was seen by Dr. Stirnaman in his office. He prescribed antibiotics and removed fluid from the wound for culturing. The culture was positive for a rare bacteria, meaning that Kamp likely had an infection in her leg. A subsequent culture revealed the presence of a staph infection. Thereafter, Kamp was referred to a St. Louis orthopedic surgeon who also happened to be an infectious disease specialist, Dr. Clayton Perry, with a tentative diagnosis of osteomyelitis, a bone infection.

Dr. Clayton Perry was not able to fully treat the osteomyelitis until the fracture had healed, because treating the infection required the removal of the plate and screws in order to be able to remove any diseased bone. By October 1998, the fracture and the wound had sufficiently healed without a sign of infection. On November 12, 1998, Dr. Perry operated on Kamp to remove the plate and the screws. During this surgery, he removed tissue from underneath the plate, which was sent for culturing. The wound was cleaned and closed with stitches. That culture revealed that there was still a staph infection in the area where the plate had been. Kamp has not had any recurrence of the infection.

Kamp filed suit against Mr. and Mrs. Preis, doing business as Preis Commercial and Realty, and against Preis Home Construction, Inc. She alleged negligent construction, negligent maintenance, and failure to warn of the maximum number of people who should be allowed on the deck. Motions to dismiss were filed. The trial court determined that the statute of limitations barred the suit against Preis Home Construction, Inc., for negligent construction but that the corporation maintained a possessory interest in the property and could be sued as a landlord. The complaint was amended several times as the case made its way to a trial.

During the trial, Kamp's attorney questioned Preis about the lease's language. Preis clarified that while the lease very specifically stated that the landlord was Preis Home Construction, Inc., he and his wife were the actual landlords, because he and his wife owned the building. Preis explained that the attorney who drafted the lease felt that they would be better protected if the corporation was listed as the

landlord. Following this testimony, Kamp's attorney voluntarily dismissed her case against Preis Home Construction, Inc.

Following deliberation, the jury returned a verdict for Kamp in the total amount of $1,300,319. The trial court granted Preis's motion for a setoff in the amount of $79,905.71, the amount of the settlement Kamp had reached with the tenant, Michael Meehan. Preis's posttrial motion asked the court to enter a judgment notwithstanding the verdict or to alternatively order a new trial. That motion was denied on June 21, 1999.

On appeal, Preis raises numerous issues relative to that order.

## II. STANDARD OF REVIEW

■ A judgment notwithstanding the verdict should not be granted unless the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favored the movant that no contrary verdict could possibly stand: *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967). A judgment notwithstanding the verdict is inappropriate in situations where " 'reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented.' " *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132, 720 N.E.2d 242, 257 (1999), quoting *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 351, 654 N.E.2d 1365, 1374 (1995). The trial court should not reweigh the evidence and set aside a verdict just because the jury could have drawn different conclusions or inferences from the evidence or because the court feels that another result would have been far more reasonable. *McClure*, 188 Ill. 2d at 132, 720 N.E.2d at 257, relying on *Maple v. Gustafson*, 151 Ill. 2d 445, 452, 603 N.E.2d 508, 512 (1992). Similarly, the appellate court should not usurp the jury's role on questions of fact that were fairly submitted, tried, and determined from the evidence which did not overwhelmingly favor either position. *McClure*, 188 Ill. 2d at 132, 720 N.E.2d at 257, relying on *Maple*, 151 Ill. 2d at 452-53, 603 N.E.2d at 512. We apply a *de novo* standard to determinations on motions for judgments notwithstanding the verdict. *McClure*, 188 Ill. 2d at 132, 720 N.E.2d at 257; *Hernandez v. Schittek*, 305 Ill. App. 3d 925, 930, 713 N.E.2d 203, 207 (1999).

■ The trial court's ruling on a motion for a new trial should not be reversed on appeal unless the party who is seeking the new trial can affirmatively show that the court clearly abused its discretion. *Maple*, 151 Ill. 2d at 455, 603 N.E.2d at 513. In determining whether the trial court abused its discretion, we must consider whether the jury's verdict was supported by the evidence and whether the complaining party was denied a fair trial. *Maple*, 151 Ill. 2d at 455, 603 N.E.2d at 513.

## III. ISSUES

### A. Dr. Perry's Testimony About Future Injury

Preis contends that the trial court erred in overruling his motion *in limine* regarding testimony Dr. Perry gave by way of evidence deposition, about the possibility that Kamp could develop osteomyelitis in the future. Dr. Perry testified that if she developed another infection, the condition would necessitate additional surgery and could possibly result in the amputation of her right leg. Specifically, Dr. Perry testified to his opinion, within a reasonable degree of medical certainty, whether Kamp could develop an infection in the future because her final culture indicated the presence of a staph bacteria in the leg: "It's more likely that she would be infected with positive cultures than if we had not found any germs at all." He finalized the thought by stating, "[I]n her case, it's more likely."

Preis correctly argues that the admission of testimony about future damages is reversible error if that testimony is based upon speculation. *Harp v. Illinois Central Gulf R.R. Co.*, 55 Ill. App. 3d 822, 827, 370 N.E.2d 826, 829-30 (1977). If a doctor testifies that a future problem or need could possibly occur, that testimony is too speculative and should not be admitted. *Brown v. Chicago & North Western Transportation Co.*, 162 Ill. App. 3d 926, 937-38, 516 N.E.2d 320, 328-29 (1987).

The line determining what testimony is allowable and what testimony is inappropriate is ruled by whether that testimony is speculative. We have previously held that testimony about future damages that have a "strong possibility" of occurring is allowable. *Zitzmann v. Miller*, 194 Ill. App. 3d 477, 484, 551 N.E.2d 707, 711 (1990). Stated simply, this issue boils down to whether the damages are speculative and whether those future damages were proximately caused by the defendant's negligence. If the defendant's negligence caused a plaintiff to suffer an injury, that plaintiff should be entitled to full compensation for that injury. *Anderson v. Golden*, 279 Ill. App. 3d 398, 401, 664 N.E.2d 1137, 1139 (1996). If the defendant's negligence places the plaintiff at greater risk for future damages, the plaintiff is entitled to recover for those damages. *Anderson*, 279 Ill. App. 3d at 401, 664 N.E.2d at 1139. To hold otherwise would mean that the plaintiff could not be made whole. Preis's argument—that future damages must be supported by testimony that the injury is at least 51% likely to occur—is not acceptable. So long as the increased risk of future injury is proven within a reasonable degree of certainty and is proximately caused by the defendant's negligence, evidence of that possibility is not speculative. *Anderson*, 279 Ill. App. 3d at 401, 664 N.E.2d at 1139.

We hold that the trial court's ruling denying Preis's motion *in limine* on this issue was correct.

## B. Evidence About Planning, Supervision, or Management of the Deck's Construction

■ Preis's attorney contends that any evidence presented at the trial following the trial court's denial of Preis Home Construction, Inc.'s motion to dismiss was erroneous. From the entirety of the written material supporting this issue in Preis's brief, it is apparent that his attorneys are arguing that the motion to dismiss should have been granted. However, since Preis Home Construction, Inc., is not a party to this appeal, we lack jurisdiction in this regard. Furthermore, Kamp's voluntary dismissal of Preis Home Construction, Inc., at the conclusion of her case did not render the trial court's previous order denying the motion to dismiss "final" for the purpose of appeal. *Saddle Signs, Inc. v. Adrian*, 272 Ill. App. 3d 132, 135-40, 650 N.E.2d 245, 247-50 (1995). On appeal, a party can only raise error harmful to a nonappealing party's rights if that error affected the appealing party's rights. *Louis Marsch, Inc. v. Pekin Insurance Co.*, 140 Ill. App. 3d 1079, 1086, 491 N.E.2d 432, 437 (1985). Preis does not make this argument in his appeal. To consider this issue, we would have to presume that Preis was harmed by the trial court's order as to Preis Home Construction, Inc. We will not make that presumption.

## C. Existence of a Defect in the Deck, Preis's Actual Knowledge, and/or Proximate Cause

Preis argues that Kamp failed to identify any latent defective condition with the deck and that, therefore, the trial court should have granted his motions for a directed verdict and a judgment notwithstanding the verdict. We have previously stated the standard of review for an appeal of a denial of a judgment notwithstanding the verdict. The standard of review for a directed verdict is identical. We must determine whether all of the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favored the movant that no contrary verdict could possibly stand. *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513-14.

Preis argues that he should have been allowed to rely upon the 10-year statute of limitations applicable to real property construction (735 ILCS 5/13—214(b) (West 1996)). He believes that he is immune from liability as a landlord because of this statute of limitations. He also contends that he could rely upon a statutory presumption of no negligence because the deck did not cause injury within six years of its construction. See 735 ILCS 5/8—1801 (West 1996). We will address each argument separately.

■ The real-property-construction statute of limitations states, "No action based upon tort *** may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission." 735 ILCS 5/13—214(b) (West 1996).

■ Again, this argument relates to Preis Home Construction, Inc., and thus it is irrelevant because the only party on appeal is Preis. Raising this argument on behalf of Preis, in his capacity as landlord, is new. Preis did not raise this issue in the trial court. We could, therefore, consider the matter waived. See 155 Ill. 2d R. 366(b)(2)(iii); *Rainey v. City of Salem*, 209 Ill. App. 3d 898, 904, 568 N.E.2d 463, 467 (1991). Even if the issue was not waived, this statute of limitations simply does not apply to an owner being sued as a landlord. *Prochnow v. El Paso Golf Club, Inc.*, 253 Ill. App. 3d 387, 392-94, 625 N.E.2d 769, 772-74 (1993).

■ The other statutory provision upon which Preis relies states, "Any work or service on real property *** which does not cause injury *** within 6 years after such performance, manufacture, assembly, engineering[,] or design[ ] shall be presumptive proof that such work *** was performed *** with reasonable care by every person doing any such acts." 735 ILCS 5/8—1801 (West 1996).

■ Preis argues that because the deck was constructed 12 years prior to this accident, the deck was presumptively constructed with reasonable care—without negligence. However, we are reminded that Preis is the only defendant before this court and that Preis was sued for negligent acts or omissions in his capacity as landlord. Having reviewed the sixth amended complaint, the complaint upon which this case was tried, we conclude that Preis was not sued for negligent acts or omissions related to the construction of the deck. Kamp alleged that he was negligent in one or more of the following respects:

"A. Permitt[ed] the deck to become in such a disrepaired condition as to be unsafe for use;

B. Allowed the deck to be used when there were insufficient supports to hold the deck in place and upright;

C. Allowed the deck to be used when it was not properly attached to the structure;

D. Failed to forewarn his tenants of the maximum number of individuals allowed on said deck."

These allegations involve the notice that Preis had, as landlord, relative to the safety of the deck at issue. The following paragraph of Kamp's complaint explains her theory: "[T]he above[-]referenced latent conditions were, or in the exercise of reasonable care would have been and should have been[,] known to *** PREIS."

In his brief on this issue, Preis attempts to steer focus in a couple of different directions. He argues that the deck was not a "balcony" for the purpose of the load requirement contained within the Building Officials & Code Administrators National Building Code (BOCA code), with which the deck was not in compliance. Second, he contends that Preis Home Construction, Inc.'s use of nails in the construction of the deck did not constitute a latent defective condition. These issues veer from the question of the statutory presumption.

Initially, we find that the statutory presumption of reasonable care in construction is explicit in its application and was not designed to apply to an owner sued in his capacity as a landlord.

Regarding the BOCA code issue, after our review of the trial transcript and the record on appeal, it is clear that Preis presented no evidence that the terms "deck" and "balcony" are not the same. Preis's attorney did argue this issue in her closing argument to the jury. Kamp presented three expert witnesses who testified that the BOCA code "balcony" load-capacity requirement applied to this deck. Preis's attorney did not object to this testimony. We find that Preis has waived consideration of this issue.

The nail issue is made more complex by the manner in which it is treated in Preis's brief. To simplify the issue, we note that some witnesses testified that 60-penny pole-barn nails were utilized in this deck's construction. Other witnesses testified that 16-penny nails were utilized in this deck's construction. The experts provided testimony regarding the problems with the deck's construction, problems which led to its deterioration and ultimate collapse. Preis felt that there should have been evidence regarding the type of metal used in the nails, whether the nails were or were not tempered, the carbon content of the nails, and the nails' tensile strength. Evidence was presented that the nails were not tempered, in that the head of every nail used to secure the deck to the building was rusted through. There was no evidence on the other issues. Expert witnesses provided opinions regarding what caused the deck's collapse. Apparently, their opinions were not based upon the issues that Preis now raises.

Ultimately, this issue amounts to a matter of witness credibility. Witness credibility is within the jury's responsibility. *Maple*, 151 Ill. 2d at 453, 603 N.E.2d at 511-12. We cannot usurp the jury's function and substitute our judgment for questions of fact that were fairly submitted, tried, and determined from the evidence presented. *McClure*, 188 Ill. 2d at 132, 720 N.E.2d at 257, relying on *Maple*, 151 Ill. 2d at 452-53, 603 N.E.2d at 512.

We do not find that all of the evidence, when viewed in the light most favorable to Kamp, so overwhelmingly favored Preis that no

contrary verdict could possibly stand. See *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513-14. The trial court's denial of Preis's motions for a directed verdict and for a judgment notwithstanding the verdict was correct.

## D. Evidentiary Rulings

### 1. *Joseph Parente's Undisclosed Opinions*

■ Preis contends that the trial court erroneously allowed portions of Joseph Parente's evidence deposition to be read to the jury. Joseph Parente, one of Kamp's witnesses with an expertise in Madison County construction and applicable BOCA code requirements, testified that the apartment building at issue was subject to the 1984 version of the BOCA code. Preis objected to Joseph Parente's testimony that the 1984 BOCA code required builders to build a deck that could support a live load of 100 pounds per square foot. Preis contends that this opinion was not disclosed either by way of interrogatory answers or by way of discovery deposition testimony. Kamp claims that the opinion was disclosed.

After our review of the entirety of the trial transcript relative to Preis's objections to Joseph Parente's testimony, it is clear that the trial court asked Kamp's attorney to provide it with specific portions of the discovery deposition transcript to confirm that the topic had been previously disclosed. There were numerous objections to this live-load-requirement line of questioning, and the trial court entertained discussion with each objection. Portions of the transcript were shown to the trial court and were the subject of argument. Preis's contention that Kamp's attorney never provided the trial court with confirmation of a prior disclosure is not necessarily true. In order for us to properly review this issue, we would need to review the discovery deposition transcript. Unfortunately, the discovery deposition transcript was not included in the record on appeal.

The burden of providing an appropriate record on appeal falls upon the appellant. *Webster v. Hartman*, 195 Ill. 2d 426, 432-33, 749 N.E.2d 958, 962-63 (2001). The trial court had access to the complete discovery deposition transcript when it ruled upon Preis's objection. Since the discovery deposition transcript is not a part of the record on appeal, we must presume that the trial court's ruling was supported by adequate evidence. See *Webster*, 195 Ill. 2d at 432-33, 749 N.E.2d at 962-63.

Even if we assumed that the trial court erred in allowing this opinion into evidence, the evidence at issue was merely cumulative of testimony provided by two other witnesses. No objection was made to the testimony of witnesses George Michael Metcalf and Scott O'Neill, who also testified about the BOCA code live-load requirements.

## 2. *Construction of the Deck*

▌ Preis next argues that the trial court abused its discretion by allowing Kamp's attorney to question Preis and witnesses Norman Halcomb and George Baumgartner about the deck's construction, in violation of the 10-year statute of limitations for construction. Preis accurately cites the statute of limitations for suing a person or entity related to the construction of a property (735 ILCS 5/13—214 (West 1996)). While suit might be time-barred, we do not believe that questions relative to construction should be completely forbidden. Bearing in mind that Preis was sued in the capacity of the owner and landlord of the property, we conclude that testimony about the deck's construction could have been material to aspects of the case against the owner/landlord. We do not find that the trial court abused its discretion in allowing this testimony.

Preis also argues that Kamp's attorney made references to lag bolts (which were used in decks constructed for Preis after the construction of the deck in question) in clear defiance of an order *in limine*. Preis is correct that the topic of lag bolts came up in the examination of two witnesses. In both instances, the subject was discussed in depth in the trial court's chambers prior to the questions being asked. The trial court allowed the questions because Kamp was merely impeaching the witnesses with previous deposition testimony. Before the impeachment, the witnesses were questioned about the use of lag bolts in deck construction prior to this accident. Preis did not object to these questions, although they were perhaps asked in violation of the *in limine* order. The answers were all in the negative, which advanced Preis's defense of this case. Only when Kamp's attorney sought to impeach the witnesses with previous testimony to the contrary did Preis's attorney object. The impeachment was proper and the trial court's ruling was not erroneous.

## 3. *Preis's Motion for a Mistrial*

▌ Preis next contends that the trial court erred in not granting his request for a mistrial after Scott Weigler testified about maintenance performed on similar decks. The trial judge, *sua sponte*, struck all of this objectionable testimony and appropriately advised the jury to disregard the testimony, but Preis believes that the situation was not remediable.

A mistrial should be called if the jury has been so influenced and prejudiced such that a fair and impartial trial cannot result even with admonitions and instructions by the trial court. *Dupree v. County of Cook*, 287 Ill. App. 3d 135, 145, 677 N.E.2d 1303, 1310 (1997). Whether to declare a mistrial is strictly within the trial court's discretion. *Du-*

*pree*, 287 Ill. App. 3d at 145, 677 N.E.2d at 1310. The party seeking the mistrial must demonstrate prejudice from the objectionable testimony and must demonstrate that the prejudice could not be effectively cured by admonitions and jury instructions delivered by the trial court. *Dupree*, 287 Ill. App. 3d at 145, 677 N.E.2d at 1310. On appeal, there is a presumption that a jury followed a trial court's admonitions. *People v. Foster*, 195 Ill. App. 3d 926, 950, 552 N.E.2d 1112, 1129 (1990).

Preis has not submitted any proof of prejudice by way of juror affidavit or otherwise. Instead, Preis argues that it was not the testimony of Scott Weigler alone that required a mistrial. He argues that a mistrial was necessitated because of the cumulative effect of the trial court's having allowed Preis and two other witnesses to testify about the construction of the other decks, in addition to having allowed the initial improper questioning of Scott Weigler. We have already concluded that testimony about the decks' construction was relevant on issues unrelated to the construction itself. Consequently, we would have difficulty finding that this appropriate testimony should have resulted in a mistrial. Furthermore, because Preis seems to merely claim prejudice without firm evidence of prejudice, we conclude that the trial court did not abuse its discretion in refusing to declare a mistrial.

### 4. *Dr. Perry's Testimony About Future Injury*

Because we have previously held that Dr. Perry's testimony about the possibility of future infection was not speculative, we find that the admission of his evidence deposition testimony on this issue was proper.

### 5. *Measurement and Strength of Pole-Barn Nail*

Preis also argues that the trial court erred in disallowing testimony by his expert, Dr. Harry Duffy, about the length and strength of a 16-penny pole-barn nail. Kamp's attorney objected to this testimony, and the trial court concluded that the proposed testimony called for an expert opinion and that this expert opinion had not been disclosed. Consequently, the trial court barred Dr. Harry Duffy from testifying about the length and strength of that particular type of nail. Preis contends that the length and the strength of the nail are facts—not opinions. We agree with this contention. Kamp argues that this testimony was improper because of the inferences to be drawn from such questions and answers.

Upon reviewing the trial transcript, we note that Dr. Harry Duffy was allowed to testify about both the length of the nail and the diameter of the nail because those facts were listed in national design-

specification charts. Kamp's objection to further testimony about the length and the diameter of the nail occurred when Preis's attorney attempted to elicit testimony about a measurement he had made just that morning. The trial court determined that this testimony did involve more than just a fact, and it sustained the objection. Thereafter, Preis's attorney attempted to have Dr. Harry Duffy measure the nail in the jury's presence. The trial court determined that because the testimony had already been given as to the length and the diameter of the nail as taken from the charts, a measurement of the nail in front of the jury had no purpose unless there was an inference to be drawn from the measurement. The trial judge indicated that this "inference" had not been disclosed, and he barred Preis's attorney from asking for the measurement.

Dr. Harry Duffy was not questioned about the strength of the 16-penny pole-barn nail, at least not directly. We suspect that the nail's strength was precisely the inference that Preis's attorney hoped to make by eliciting an expert's measurement in the jury's presence. We conclude that the trial court's evidentiary ruling on this issue was correct.

### 6. *Jury Instruction on Future Damages*

Finally, Preis contends that the trial court erred in instructing the jury regarding future damages. A party is entitled to have the jury instructed on his or her theory of the case. *Martoccio v. Western Restaurants, Inc.*, 286 Ill. App. 3d 390, 392, 675 N.E.2d 1045, 1047 (1997). Because we have previously concluded that evidence of future damages was appropriately allowed, we find that instructions based upon that evidence were proper.

## IV. CONCLUSION

We find that the questions of fact were fairly submitted, tried, and determined by the jury from evidence which did not overwhelmingly favor either party. We cannot conclude that the evidence so overwhelmingly favored Preis that a contrary verdict would never stand. The trial court's denial of Preis's motion for a judgment notwithstanding the verdict was appropriate. Furthermore, we find that the trial court did not abuse its discretion in denying Preis's motion for a new trial. For the foregoing reasons, the judgment of the circuit court of Madison County is hereby affirmed.

Affirmed.

MAAG, P.J., and HOPKINS, J., concur.