STANDARD OIL CO. v. WATTS et al.

(Circuit Court of Appeals, Seventh Circuit.
March 22, 1927.)

No. 3806.

1. Mines and minerals ☜86—State statute requiring filing of maps of mines, held for benefit of surface and adjoining owners, as well as for employees (Smith-Hurd Rev. St. Ill. 1925, c. 93, and § 7, par. [j]).

Though Illinois mining statutes (Smith-Hurd Rev. St. Ill. 1925, c. 93), in the main, deal with safety of mine employees, requirements thereof as to filing of maps and plats of mines are not limited to that purpose, but are for protection of owners of surface and adjoining property, in view of section 7, par. (j).

2. Evidence ☜358—Mining maps, filed under state statute, held admissible in surface owner's action for damages for substance (Smith-Hurd Rev. St. Ill. 1925, c. 93).

Maps and plats, made and filed by mine owner under requirements of Illinois mining statute (Smith-Hurd Rev. St. 1925, c. 93), are admissible in evidence to show extent of underground workings, in action by owner of surface against owner of mining rights for damages caused by subsidence of surface, regardless of purpose for which such maps and plats were required.

3. Mines and minerals ☜125—Evidence of removal of subjacent support in mining operations is prima facie proof that subsidence was caused thereby, and mine owner must show contrary.

Evidence of the removal of any of the subjacent support in mining operations, without other proof, is prima facie evidence that subsidence of surface was caused thereby, and it is for mine owner, who has control of underground workings and is in possession of facts, to show contrary by proof of underground conditions.

4. Mines and minerals ☜125—Damages from mining operations, causing subsidence of surface, held for jury, and verdict will not be disturbed by appellate court.

Damages sustained by owner of farm from subsidence caused by mining operations and removal of subjacent support was question for jury, where evidence was conflicting, and verdict will not be disturbed because it is larger than Circuit Court of Appeals would have awarded.

In Error to the District Court of the United States for the Southern Division of the Southern District of Illinois.

Action by D. G. Watts and another against the Standard Oil Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Thomas Williamson, of Edwardsville, Ill., for plaintiff in error.

W. Edgar Sampson, of Springfield, Ill., for defendants in error.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. Defendants in error recovered a judgment for $5,000, for damages caused, as they allege, through the undermining of their land by plaintiff in error, and the consequent subsidence of the surface. Defendants in error owned a farm of 110 acres near Carlinville, Ill. Plaintiff in error owned the underlying coal rights, which it acquired in 1918 from a predecessor which had conducted some mining operations there. Plaintiff in error materially extended these operations, and by 1921 much of the coal under the farm had been mined. It is contended for plaintiff in error that there is no competent evidence to indicate that it mined the coal beneath the farm, and that in any event there was no evidence to indicate that the alleged subsidence of the surface was caused by the mining operations.

Upon these propositions the only evidence offered for defendants in error was the maps or plats for the year 1918 and subsequent years, which were filed with the recorder of the county, and which purport to indicate the condition and extent of the mining operations for the year preceding. The mining statutes of Illinois (Smith-Hurd Rev. St. Ill. 1925, c. 93) require operators of coal mines to make an accurate map of their mines, showing the surface boundary lines of the coal rights, and the quarter section lines and corners, and all lots, railroad tracks, wagon roads, and rivers, etc., on the surface, and all shafts, slopes, excavations, entries, rooms, etc., in the underground workings of the mine. It is provided that a copy of such maps shall be kept at the mine and furnished to the state inspector of mines and one copy is to be filed in the office of the recorder of the county for examination by all persons interested. The act provides for annual extension and filing of the map, to show all new underground workings. Such maps were annually duly prepared and filed by plaintiff in error, and were those offered in evidence by the plaintiffs in the action.

The evidence fairly shows that the mine extensions, after 1918 and up to the year 1921, underlie much of the surface of the farm, including those parts where the subsidences appear. The authenticity of the maps was conceded, but it is contended that in and of themselves they prove nothing, and, as there was no proof apart from the maps that the coal had been removed, that this essential fact does not appear.

[1, 2] It is contended that the mining statute was adopted wholly to promote the safety of

employees, and has no relevancy to an action such as this, and that, as the maps provided for are wholly in the furtherance of such safety, they were not admissible here for any purpose. While it is true that the act has to do, in the main, with the safety of employees, the specific requirements as to maps and plats is evidently not limited to that purpose. Paragraph (j) of section 7 of the act would definitely indicate such further purpose in providing for further survey of the workings of the mine "whenever the safety of the workmen, unlawful injury to the surface, unlawful encroachment upon adjoining property, or the safety of an adjoining mine requires it." But the propriety of using the maps as evidence is not dependent alone upon the purpose for which they are prepared and filed. It is a legal requirement that the mine operator accurately prepare and file such map, regardless of the purpose, and when he does it, and the map is duly identified as having been so prepared and filed by the operator of the mine, it is a declaration on the part of the mine operator of what the map purports to show. The fact that the operator had mined the coal beneath this surface might have been shown by evidence of any declaration by it to that effect, oral or written; and what declaration more solemn and authentic than one it deliberately prepares and files in obedience to a legal duty? We are satisfied that the maps were properly admitted as evidence of the extent of the underground workings beneath this farm.

[3] But it is contended that, even though admissible to prove the extent of the mining operations, the fact that such were carried on beneath this surface does not of itself prove that the subsidence was caused thereby, and that, no other evidence thereon appearing, the record wholly fails to show that plaintiff in error is responsible therefor.

In this respect this case appears to be somewhat unusual. In most of the cases cited on the subject it appears that there was evidence, beyond the mere fact that the coal had been removed, upon the subject of whether the injury to the surface was caused thereby. In the absence of evidence of any other cause, is it unreasonable to conclude that a subsidence of the surface, following removal of subjacent coal, was caused by it? We believe the law of gravity requires a negative reply. It goes without saying that the removal of any part of subjacent support has some tendency to bring down what is above, and where it appears there has been such removal, notwithstanding it may also appear that supposedly sufficient support was left, a subsidence of what is above, not otherwise explained, may be assumed to have been thus caused. In Wilms v. Jess, 94 Ill. 464, 34 Am. Rep. 242, the court said:

"The act of removing all support from the superincumbent soil is, prima facie, the cause of its subsequently subsiding; but if the subsiding is, in fact, caused by the weight of buildings erected subsequent to the execution of the lease of the mine, this is in the nature of contributive negligence, and may be proved in defence. The authorities do not require that plaintiff's proof shall exclude that hypothesis in the first instance."

It is claimed for this case that the presumption follows only where "all support" is removed. This happened to be the facts of that case. Of course, strictly speaking, if all support is removed, what is above must fall. The principle applies if any of the subjacent support is removed. If the subsidence follows, it may be attributed to the removal, unless some other cause appears.

In brief for plaintiff in error it is said:

"None of these blueprints indicate any 'caving in of the roof,' 'coming up of the bottom,' * * * 'defective roof conditions,' or any similar or like conditions. If the alleged low places are the result of removal of support, there would certainly be some evidence thereof in the coal vein. Inasmuch as blueprints, showing no condition that would indicate removal of support, were the only evidence offered, and no witnesses were called to show underground conditions, then the assumption must naturally follow that there are or were no such conditions."

This was plaintiff in error's mine, to which it had access at all time, and defendants in error had no right there for any purpose, except by permission. If any one knew of, and could show, these physical conditions, the absence of which would, as stated, conclusively show that the underground workings bore no causal relation to the subsidence, it was plaintiff in error. Its surveyor, Nifong, whom it had employed for five years, testified at the trial, and he, who of all persons presumably knew the conditions of these workings, was silent on that subject. If counsel's assertions were correct, and the working places were free from "caving in," etc., whereby it would conclusively appear that the mining operations had nothing to do with the subsidence of the surface, how easily this surveyor would have established the fact. The failure of plaintiff in error to offer its readily available evidence of the actual condition of the coal

seams and workings is quite suggestive that it would have proved harmful to its case. This is not a criminal case, where the proof must be beyond reasonable doubt, and where no presumption goes from failure of a defendant to testify. If, as we believe, in the absence of any other evidence thereon, it may reasonably be concluded that the mining operations caused the subsidence in the surface, it was not incumbent upon the plaintiff in the action to show additionally such underground conditions as would tend further to have established this cause, particularly where the evidence of the facts is thus wholly within the control of the opposite party.

[4] Plaintiff in error earnestly maintains that in no view of the evidence does any considerable amount of damage to the farm appear as the result of the subsidence. Although it seems to us that the damages awarded are unduly large, it must be borne in mind that this court does not sit in judgment upon the facts. A number of witnesses testified to damage of from $50 to $100 an acre to the entire farm by reason of the subsidence in the surface, and although, on behalf of the plaintiff in error, a number of witnesses testified there was substantially no damage, the question was for the jury, and we are not warranted in disturbing the judgment because the verdict reached was larger than it now seems to us we would have awarded.

We find no merit in the criticism of the court's charge to the jury. The judgment is affirmed.