Fred E. HAUSMAN, Plaintiff–Appellant,

v.

MONARCH MACHINE TOOL COMPANY and Stamco Industries, Incorporated, Defendants–Appellees.

No. 92–1587.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 25, 1993.

Decided June 30, 1993.

Robert L. Carter, Reinert, Duree & Crane, St. Louis, MO, William C. Evers, III, Collinsville, IL, David M. Duree (argued), O'Fallon, IL, for plaintiff-appellant.

Edward L. Adelman, Eric C. Young (argued), Dunham, Boman & Leskera, East St. Louis, IL, for defendants-appellees.

Before CUDAHY and FLAUM, Circuit Judges, and MIHM, District Judge.*

CUDAHY, Circuit Judge.

The plaintiff, whose hand was injured in an accident involving equipment he operated at his job, sued the manufacturer for negligent design and manufacture of the equipment. The district court held the suit barred by Illinois' statute of repose and granted summary judgment for the manufacturer. We affirm.

## I.

The plaintiff, Fred E. Hausman, was an employee of Olin Corporation in February 1988 when the injury that gave rise to this action occurred. More than 20 years earlier, in July 1966, Olin contracted with Midland Ross Corp. to design and construct an anneal line at Olin's plant in East Alton, Illinois. Midland Ross hired Stamco, Inc.—which the defendant, Monarch Machine Tool Company, later purchased [1]—to furnish labor and material to provide the terminal equipment for the continuous anneal line. Monarch had earlier provided Midland Ross with specifications and a quotation to provide various components for the anneal line's entry and exit terminals and for the services of one of Monarch's erection engineers.

Over the course of the next several months, Monarch designed twenty-eight system components, meeting regularly with representatives from Olin and other contractors to work out the details of the project and to ensure that the components Monarch provided functioned properly with the other components of the anneal line. A Monarch engineer supervised the alignment and start-up and assisted in problem-solving. The shear table that the plaintiff was operating when his injury occurred was designed and custom-built to attach to two related components, the exit shear and the exit deflector roll. Monarch bought the shear table from a weldment supplier and machined and assembled the unit.

The shear table is part of the continuous anneal line that processes metal coils coming from a rolling mill. Equipment in the entry terminal unwraps the coil and joins it to another coil already being processed. The coils are then stitched together so that the coil being processed pulls the next coil through the system. When a coil has been processed, the exit terminal equipment winds the coil and cuts it from the following coil. The shear table Hausman operated is used to cut the stitch out between the rolls to allow the first coil to be wound. The shear table allows the leading edge of the strip of coil to go through an oiling roll and onto the thread table at the terminal end.

---

* The Honorable Michael M. Mihm, Chief Judge of the United States District Court for the Central District of Illinois, is sitting by designation.

1. Stamco has been a division of Monarch since 1968. For simplicity's sake, we will hereafter refer to Stamco as Monarch.

On February 21, 1988, Hausman was operating the shear table when it collapsed and crushed his left wrist. Hausman filed a complaint in Illinois state court on February 20, 1990, contending that Monarch negligently designed the exit end shear table by locating a pneumatic cylinder, which raises and lowers the shear table, on the side of the table instead of centering it underneath. The side location created an offset load that strained the bolts holding the cylinder to the shear table, according to Hausman, who sustained his injury when the bolts failed and the table collapsed. Hausman also alleges that the design and manufacture of the shear table should have included a safety stop to prevent it from collapsing into the scrap bin and injuring the operator's hands.

The case was removed to the District Court for the Southern District of Illinois, which had diversity jurisdiction.[2] On September 23, 1991, Monarch moved for summary judgment, arguing that Hausman's claim was barred by the Statute of Repose for Improvements to Real Property, ch. 110, § 13–214(b) Ill.Rev.Stat. ch. 110 para. 13–214(b). The district court subsequently granted summary judgment on that basis. Hausman appeals.

## II.

The Illinois statute of repose at issue in this case, entitled "Construction—Design, Management and Supervision," provides that

> [n]o action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission. However, any person who discovers such act or omission prior to expiration of 10 years from the time of such act or omission shall

in no event have less than 2 years to bring an action as provided in subsection (a) of this section.

Ill.Rev.Stat. ch. 110, para. 13–214. The district court stated that a defendant qualifies for relief under the statute if it (a) participated in the design, planning, supervision, observation or management of the construction of (b) an improvement to real property and (c) that improvement occurred more than 10 years before the claim arose.[3] Concluding that the activity of Stamco—Monarch's predecessor—was not merely as a supplier or manufacturer of a component, but "integral" to the improvement to real property and that the improvements occurred more than ten years before the cause of action accrued, the district court granted Monarch's motion for summary judgment.

We review that grant of summary judgment de novo, considering the facts in the light most favorable to the nonmoving party. Hausman's appeal challenges both the district court's determination that the equipment at issue constitutes an "improvement to real property" and that Monarch participated in the design, planning, supervision or management of its construction within the meaning of the statute of repose. Our task is to determine whether, as a matter of law based upon undisputed facts, the statute of repose bars Hausman's claim.

We turn first to Hausman's contention that genuine issues of fact remain as to whether Monarch participated in the "design, planning, supervision, observation, or management of construction, or construction" within the meaning of paragraph 13–214. The list of included activities is notably disjunctive; Monarch therefore falls within the protected class if it engaged in any one of the listed activities. Hausman portrays Monarch as a mere manufacturer that is quite unlike the contractors, architects and engineers con-

---

2. Hausman was a resident of Illinois and Monarch is an Ohio corporation with its principal place of business in Ohio. The amount in controversy exceeds $50,000. *See* 28 U.S.C. § 1441.

3. The statute, which originally had prohibited actions after 12 years elapsed since the act or omission in the design, planning, supervision, observation or management of construction, or

construction of an improvement to real property, *see* Ill.Rev.Stat. ch. 110, para. 13–214 (1984), has since been amended to bar such actions after 10 years. *See* Ill.Rev.Stat. ch. 110, para. 13–214 (Supp.1992). The defendant's actions in the case before us occurred in 1966–67—more than 20 years before the plaintiff was injured.

templated in section 13–214. But as we noted in *Hilliard v. Lummus Co.*, 834 F.2d 1352 (7th Cir.1987), "[m]ere labels are not dispositive" and section 13–214 "protects, on its face, anyone who engages in the enumerated activities." *Id.* at 1358 n. 6 (citing *Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 114 Ill.2d 252, 261, 102 Ill.Dec. 412, 415, 500 N.E.2d 34, 37 (1986) (emphasis omitted)). Hausman makes much of the fact that under the contract Monarch was explicitly not responsible for installation of the equipment and that Monarch admitted it did not participate significantly in the alterations and modifications to the Olin building that housed the anneal line. Even if we accept Hausman's characterization as true, however, there can be no doubt that Monarch was involved, at the very least, in the design, planning and supervision of the construction of the project, if not the observation or management of construction and the construction itself. Monarch designed the entry and exit terminals of the continuous anneal line, assembled the components and supervised their installation to ensure that the components were properly integrated with the rest of the system. The facts can support no other conclusion but that Monarch participated in the design, planning, supervision, observation or management of construction, or construction of the project. As to this issue, the district court did not err in granting summary judgment on behalf of Monarch.

■ A somewhat harder question is whether the equipment Monarch furnished constitutes an "improvement to real property" within the meaning of the statute. Illinois courts and this court have viewed the application of the statute of repose to this issue as a question of law. *See, e.g., Hilliard*, 834 F.2d at 1354; *St. Louis v. Rockwell Graphic Systems, Inc.*, 153 Ill.2d 1, 178 Ill. Dec. 761, 605 N.E.2d 555 (1992).

The Illinois Supreme Court appeared poised to resolve the issue in the recent case *St. Louis v. Rockwell Graphic Systems, Inc.*, 153 Ill.2d 1, 178 Ill.Dec. 1, 605 N.E.2d 555 (1992), in which the defendant Rockwell designed, manufactured and helped install a printing press. Instead, the Court concluded only that it had an insufficient factual record

concerning the printing press to decide whether the press was "an improvement to real property." *Id.* The Court offered some insight on how to construe that phrase, however, and its observations, coupled with the earlier construction of the law by lower state courts and by this court, indicate that the design project Monarch provided for Olin was in fact an improvement to real property under section 13–214(b).

■ Specifically, the *St. Louis* court looked first to the Black's Law Dictionary definition of improvement—"[a] valuable addition to property ... or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." 153 Ill.2d at 4, 178 Ill.Dec. at 2, 605 N.E.2d at 556 (citing Black's Law Dictionary 682 (5th ed. 1979)). Contrary to a minority view that has emerged in some jurisdictions, *see, e.g., Smith v. Allen–Bradley Co.*, 371 F.Supp. 698, 700 (W.D.Va.1974), the court said "improvement to real property" is not the same as "fixture" but that the identity of an improvement might not be separate from the overall system or building in which it is located. 153 Ill.2d at 4, 178 Ill.Dec. at 2, 605 N.E.2d at 556. Criteria for determining what constitutes "an improvement to real property" include "whether the addition was meant to be permanent or temporary, whether it became an integral component of the overall system, whether the value of the property was increased, and whether the use of the property was enhanced." *Id.*

In applying these criteria to the facts before us, we are cognizant of the general view of the Illinois courts that the analysis should focus on the entire construction project or system rather than on a single component of the system. *Cross v. Ainsworth Seed Co.*, 199 Ill.App.3d 910, 145 Ill.Dec. 927, 557 N.E.2d 906 (4th Dist.1990); *Kleist v. Metrick Electric Co.*, 212 Ill.App.3d 738, 742–43, 156 Ill.Dec. 839, 841–42, 571 N.E.2d 819, 821–22 (1st Dist.1991); *St. Louis v. Rockwell Graphic Systems, Inc.*, 220 Ill.App.3d 704, 163 Ill. Dec. 142, 581 N.E.2d 93 (1st Dist.1991) (stating that "the relevant inquiry should concentrate on the entire system and not on a

single component"), *vacated on other grounds,* 153 Ill.2d 1, 178 Ill.Dec. 761, 605 N.E.2d 555 (1992); *see also Hilliard,* 834 F.2d at 1356. Accordingly, a component or part of a system can be an improvement to real property if it is an essential or integral part of the improvement to which it belongs. *Kleist,* 212 Ill.App.3d at 743, 156 Ill.Dec. at 841–42, 571 N.E.2d at 821–22 (citing *Mullis v. Southern Co. Servs., Inc.,* 250 Ga. 90, 94, 296 S.E.2d 579, 584 (1982)). In spite of this line of cases, Hausman's argument focuses upon the shear table alone without asserting facts contrary to Monarch's position that the shear table is an essential component of the entire anneal line. In the absence of facts materially inconsistent with this assessment, then, we find that Monarch's detailed description of the system supports its contention that the shear table was in fact integral to the system as a whole.

Thus our inquiry turns on whether the continuous anneal line was itself an improvement to real property. The *St. Louis* court found its ability to decide the case impaired by the lack of evidence regarding the scope of the project; its cost, size or weight; its method of installation; and the building modifications necessary to accommodate it. However, the record in the case before us is sufficiently detailed to allow us to evaluate the nature of the equipment and the construction process. The anneal line, which was 80 feet tall and more than 150 feet long, was part of a multimillion dollar construction project at Olin. To accommodate the equipment, Olin had to raise the roof of its building 50 feet, remove the floor to allow for new footings and foundations and install water drain and supply lines. The anneal line at issue here was the first strip anneal line to be placed in this particular part of the plant, and it was capable of handling heavier gauge coils than the other lines. Appellee's Supp. App. at 55.

Guided by the language in *St. Louis,* we conclude that the anneal line constitutes more than mere repairs or replacement, and also is a permanent installation that substantially enhances the value of the property by, *inter alia,* allowing Olin to anneal heavier gauge steel. *See St. Louis,* 153 Ill.2d at 4–5,

178 Ill.Dec. at 762, 605 N.E.2d at 556; *Calumet Country Club v. Roberts Envtl. Control Corp.,* 136 Ill.App.3d 610, 91 Ill.Dec. 267, 483 N.E.2d 613 (1985) (stating that an improvement "substantially enhances the value of the property"); *Hilliard,* 834 F.2d at 1354–55 (citing *Calumet Country Club*). The project therefore constitutes an improvement to real property within the meaning of paragraph 13–214 and the terms of that provision prohibit Hausman's suit.

### III.

The language of section 13–214 comprehends Monarch's involvement in the construction of the anneal line, and the project itself constitutes an improvement to real property within that statute of repose. As a result, Hausman's cause of action is barred and summary judgment for the defendant was proper. For the foregoing reasons, we AFFIRM the decision of district court.