**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**W.R. GRACE & COMPANY–CONN., Defendant–Appellant.**

No. 93–3685.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1994.

Decided May 17, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied June 16, 1994.

Edward J. Westbrook (argued), L. David Condon, and J. Anderson Berly, III, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, for plaintiff-appellee.

Hugh V. Plunkett, III (argued), John C. Childs, Allen W. Hinderaker, and Donald R. McNeil, Jr., Popham, Haik, Schnobrich & Kaufman, Minneapolis, MN, for defendant-appellant.

Before POSNER, Chief Judge, BAUER, Circuit Judge, and ASPEN, District Judge.*

POSNER, Chief Judge.

In 1963 W.R. Grace & Company became the manufacturer of "Mono–Kote" fireproofing material, a dry mixture of vermiculite, gypsum, and asbestos packed and sold in 50–pound bags to construction companies. At the construction site a contractor or subcontractor would mix the Mono–Kote with water and spray the mixture on structural steel to fireproof it. In the early 1970s, State Farm insurance company built a corporate headquarters and two other buildings. The architect's plans specified "cementitious" fireproofing, of which Mono–Kote was a prominent brand. The contractors bought and used Mono–Kote for the fireproofing of the buildings. Ten years later State Farm discovered large quantities of airborne asbestos fibers in the three buildings and undertook a costly program to remove the Mono–Kote. Later State Farm brought this diversity tort action against Grace, charging that Grace had failed to warn State Farm that Mono–Kote contained asbestos and had not tested the product adequately before sale. The very use of asbestos in Mono–Kote, State Farm charged, was gratuitous because Grace had developed an asbestos-free variant (Mono–Kote 4) that worked just as well and cost only a little more. Grace had failed to sell State Farm Mono–Kote 4 only because it was trying to unload its inventory of the old Mono–Kote (Mono–Kote 3) and because the price of Mono–Kote 4 was limited by price controls. (Eventually Grace did begin supplying Mono–Kote 4 for the State Farm building projects.) The suit charged negligence and breach of warranty. The district judge held the warranty claim time-barred but allowed the negligence claim to go to the jury, the Supreme Court of Illinois having relaxed the "economic loss" rule in asbestos cases. *Board of Education v. A, C & S, Inc.,* 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580, 585–90 (1989). The jury found that Grace had been negligent, and, after a reduction in the verdict by reason of State Farm's contributory negligence, judgment was entered for $12.5 million.

■ The only issue raised on appeal is whether State Farm's suit is barred by the Illinois Design and Construction Statute of Repose, which bars any tort suit "brought against any person for any act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property[,] after 10 years have elapsed from the time of such act or omission." 735 ILCS 5/13–214(b). If that is the character of Grace's act or omission, the suit is indeed barred. The judge thought not, 834 F.Supp.

* Hon. Marvin E. Aspen of the Northern District of Illinois.

1052, 1056–61 (C.D.Ill.1993), but propounded the following special interrogatory, which the jury answered "Yes": "Did W.R. Grace provide design, planning, supervision, observation or management of construction services related to installation of fireproofing to State Farm Mutual Automobile Insurance Company in addition to supplying bags of Monokote 3 and Monokote 4 fireproofing?"

The special interrogatory is a red herring. (Why it was asked eludes us.) It embellishes the statute with the expansive term "services" and brings in Grace's activities with regard to Mono–Kote 4, which is not the product on which the suit is based. The few visits that employees of Grace made to the building sites occurred, with one possible exception, after the Mono–Kote 3, the product in suit, had been sprayed on. Grace did not supervise the spraying.

The original version of the statute was invalidated as "special legislation," mainly because it excluded from its protection owners or occupiers of the property on which the building was being built or the improvement being made. *Skinner v. Anderson,* 38 Ill.2d 455, 231 N.E.2d 588 (1967). So the legislature amended the statute to knock out the exclusion. The revised statute was upheld in *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.,* 114 Ill.2d 252, 102 Ill.Dec. 412, 500 N.E.2d 34 (1986), where the court remarked that the revised statute "does not exclude persons based upon their status" but instead protects "anyone who engages in the enumerated *activities." Id.,* 102 Ill.Dec. at 415, 500 N.E.2d at 37 (emphasis in original). Grace fastens on this language, arguing that the fact that it is a manufacturer rather than a designer, builder, etc. does not exclude it from the statute's protection. That is true but the activities in which it engaged in relation to the Mono–Kote 3 used in the construction of State Farm's three buildings are not reasonably interpreted as design, supervision, observation, planning, etc. Grace did not spray the structural steel in the buildings with a mixture of Mono–Kote and water. It merely sold bags of Mono–Kote for application by a contractor or subcontractor at the building site.

The bags came with instructions. Most products do. If including instructions with the delivered product makes a supplier a designer or builder, then virtually every supplier of building materials is protected by the statute of repose despite the legislature's evident intent to circumscribe its protection far more narrowly—in fact as narrowly as the Supreme Court of Illinois would permit. Grace points us to a letter from a subcontractor to the contractor for one of the buildings requesting approval for the use of Mono–Kote as the material for fireproofing the building. Enclosed are a "To Whom It May Concern" letter from Grace certifying that the Mono–Kote to be supplied to the subcontractor complies with Underwriters' Laboratories specifications and a printed brochure describing Mono–Kote, explaining how it should be installed, and reciting its Underwriters' Laboratories ratings. Grace argues that the subcontractor followed these directions to a T and we may assume that it did, but we do not see how that turned Grace into a designer or builder. Every product used in the construction of a building has attributes that constrain its use, hence "specifications" express or implied for that use. If this is enough to make the supplier of the product a delegate of the architect, furnishing design specifications that otherwise the architect himself would have to furnish, the statute will embrace every supplier of building materials. Surely that was not intended.

■ Even if all this is wrong and the printed brochure made Grace a designer or builder of State Farm's buildings, Grace would still lose. Its negligence had nothing to do with the installation or application of the Mono–Kote. So far as appears, the directions for the installation of the product were perfectly adequate and it could not have been installed better. The problem was in the design of the Mono–Kote (to include asbestos), the failure to test the product, and the failure to warn about it. These negligent acts or omissions, being remote from building construction, were not the sort of activities that the statute was intended to shield from late-filed products liability suits, as the California courts have held in interpreting a materially identical statute. *Baker v. Walker & Walker, Inc.,* 133 Cal.App.3d 746, 184 Cal.

**958**

Rptr. 245, 251 (1982). Grace itself emphasizes that the statute protects activities rather than particular persons. *People v. Asbestospray Corp.*, 247 Ill.App.3d 258, 186 Ill.Dec. 462, 467, 616 N.E.2d 652, 657 (1993); *C.S. Johnson Co. v. Champaign National Bank*, 126 Ill.App.3d 508, 81 Ill.Dec. 663, 665, 467 N.E.2d 363, 365 (1984). It protects none of the activities that the jury could have found to be tortious.

 But our analysis is incomplete. We have been focusing on the meaning of designing, planning, constructing, etc. the *building;* the statute also embraces the designing, planning, constructing, etc. of *improvements* to the building. If the Mono–Kote itself is an improvement, it unquestionably was an improvement designed and constructed by Grace, so Grace would be home free. Of course calling a spray an "improvement" would do violence to the ordinary meaning of the word when it is used in the context of construction, as well as impart a breathtaking scope to the statute. An extension to a kitchen is an improvement; the paint on the extension is not. But the Supreme Court of Illinois, whose interpretation of the statute's meaning we are trying to predict, has defined improvement so broadly—in terms of a list of criteria such as whether "the addition was meant to be permanent or temporary" and "whether it became an integral component of the overall system," *St. Louis v. Rockwell Graphic Systems, Inc.*, 153 Ill.2d 1, 178 Ill. Dec. 761, 762, 605 N.E.2d 555, 556 (1992)—as to bring the Mono–Kote sprayed onto the structural steel in State Farm's buildings within the semantic, if not necessarily the intended, reach of the definition.

The *St. Louis* case involved a printing press, and the court remanded for a determination whether, given the cost of the press, its size, and the building modifications if any required for its installation, it was an improvement. Our decision in *Hausman v. Monarch Machine Tool Co.*, 997 F.2d 351, 354–55 (7th Cir.1993), interpreting the Illinois statute, found that a 150–foot–long machine for annealing steel, the installation of which had required raising the roof of the factory, was an improvement to the factory building. *Witham v. Whiting Corp.*, 975

F.2d 1342, 1346–47 (7th Cir.1992), reached the same conclusion with regard to a stationary crane that had been custom-designed to fit into the building where the accident occurred. Each of these cases involved a palpable improvement; it does not follow that a standard product incorporated into the improvement, or into the underlying building being improved, is also an improvement. *People v. Asbestospray Corp., supra,* 186 Ill. Dec. at 467–68, 616 N.E.2d at 657–58, holds, correctly in our view, that it is not. See also *Hilliard v. Lummus Co.*, 834 F.2d 1352, 1357 (7th Cir.1987); *Corbally v. W.R. Grace & Co.*, 993 F.2d 492 (5th Cir.1993); *Baker v. Walker & Walker, Inc., supra,* 184 Cal.Rptr. at 250; *Sevilla v. Stearns–Roger, Inc.*, 101 Cal. App.3d 608, 161 Cal.Rptr. 700, 702 (1980). No case extends the concept of improvement to a spray.

The judgment for State Farm is

AFFIRMED.