In the

# United States Court of Appeals
### For the Seventh Circuit

_____

No. 07-1945

AMBROSIA LAND INVESTMENTS, LLC,

*Plaintiff-Appellant,*

and

ILLINOIS MINE SUBSIDENCE INSURANCE FUND,

*Intervening Plaintiff-Appellant,*

*v.*

PEABODY COAL COMPANY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05 C 371—**David R. Herndon**, *Chief Judge.*

_____

ARGUED OCTOBER 23, 2007—DECIDED APRIL 9, 2008

_____

Before BAUER, CUDAHY and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-Appellant Ambrosia Land
Investments, LLC[1] ("Ambrosia") and Intervening Plaintiff-
Appellant Illinois Mine Subsidence Insurance Fund ("the

_____

[1] Ambrosia Land Investments, LLC was substituted as the
plaintiff-appellant for Wilke Window & Door Company, Inc.,
on September 5, 2007.

Fund") (collectively "the Plaintiffs") appeal the district court's conclusion that their claims are barred by the Illinois Construction Statute of Repose, 735 ILCS 5/13-214(b). For the following reasons, we reverse.

## I. Background

In 1995, Ambrosia constructed a warehouse on its property in St. Clair County, Illinois, which happened to be located above St. Ellen Mine ("the Mine"), an underground coal mine originally built in the early 1900s that spans over 3,800 acres. Peabody, who had acquired the rights to the Mine in 1957 from Perry Coal Company, operated the Mine until 1960, when it closed the Mine. The Mine was designed using a widely-recognized method of mining called the "room and pillar," in which shafts are driven down into the earth, creating passageways for the movement of coal and personnel. Coal is removed, leaving empty areas or "rooms." "Pillars" are then formed from the remaining coal and rock, providing structure and support for the rooms and for the surface above the mine during the time the mine is in operation and permanently thereafter. While pillars are usually reinforced with secondary support by installing bolts or timber, because of the passage of time, the exact type of secondary support used in the Mine is unknown. As time passes, the surface above a mine sinks or shifts as a result of mine subsidence, which is the deterioration of the pillars, design defects, or geological occurrences.

In order to insure that property owners have the financial resources to repair damage to property caused by mine subsidence, the Illinois legislature established the Fund to provide reinsurance for mine subsidence losses

to Illinois property. 215 ILCS 5/801.1, 5/803.1. The Fund is required to enter into reinsurance agreements with all Illinois property insurers, whereby premiums are collected by the insurer and paid to the Fund under the agreement. Once the insurer receives a claim of potential mine subsidence from the property owner, it forwards the claim to the Fund. The Fund hires geologists to investigate the claim and eventually determine whether the damage was caused by mine subsidence or other earth movement. If the Fund determines that the damage was caused by mine subsidence, it notifies the insurer, who in turn fulfills its contractual duties by paying the insured for the losses claimed, and then requests reinsurance reimbursement from the Fund. The Fund reimburses the property insurer for the amount it paid to its insured, and the Fund is then subrogated to the rights of both the insured and the property insurer. *See* 215 ILCS 5/815.1(b).

In late November 2000, forty years after Peabody closed the Mine, Ambrosia noticed that its warehouse had structural damage. Suspecting that the damage was the result of mine subsidence, Ambrosia filed a claim with its insurance company, Federated Mutual, on its insurance policy for mine subsidence loss coverage. Federated, in turn, forwarded the claim to the Fund. The Fund received Federated's claim and hired geologist Stephen Danner to investigate. On March 14, 2002, Danner concluded that mine subsidence from the Mine caused damage to the warehouse on the Ambrosia property. Federated paid Ambrosia the maximum amount of its mine subsidence loss coverage policy—$350,000—and then requested reimbursement of that amount from the Fund. The Fund paid Federated the full amount of the claim.

On April 21, 2005, Ambrosia filed suit against Peabody in Illinois state court, claiming that it sustained actual damages that substantially exceeded the $350,000 amount that it received from Federated. The complaint alleged that (1) Peabody, as owner and operator of the Mine, was negligent in failing to provide adequate support for the surface above the Mine, and (2) Peabody violated its duty to prevent mine subsidence under the Illinois Surface Coal Mining Land Conservation and Reclamation Act ("SCMLCRA"), 225 ILCS 720/4.02. Peabody removed the case to federal court on the basis of diversity jurisdiction. In October, 2005, the Fund moved to intervene as an additional plaintiff under 215 ILCS 5/815.1, claiming Peabody was strictly liable for failing to provide sufficient support for the surface of the Ambrosia property, and asserting its subrogation rights to recover the $350,000 it paid pursuant to its reinsurance agreement with Federated in 2002.

Peabody moved for summary judgment, asserting in part that Plaintiffs's sought to hold Peabody liable for their acts or omissions that occurred over forty-five years ago, and that a coal mine constituted an improvement to real property, thus Plaintiffs's claims were barred under the Illinois Construction Statute of Repose, 735 ILCS 5/13-214(b).

Plaintiffs also filed a summary judgment motion, claiming that it was undisputed that the warehouse was undermined by Peabody during the period it operated the Mine (1957 to 1960), and because a surface owner had an absolute right to subjacent support, Peabody was strictly liable for failing to provide subjacent support under Illinois law. Plaintiffs also argued that § 13-214(b) did not bar their claims because the removal of coal was not construction of an "improvement to real property."

On March 27, 2007, the district court granted Peabody's motion for summary judgment, finding that § 13-214(b) barred Plaintiffs's claims because a coal mine constituted "construction of an improvement to real property." Accordingly, the district court denied Plaintiffs's motion for summary judgment as moot. This timely appeal followed.

## II. Discussion

We begin by determining whether the district court erred in granting summary judgment in favor of Peabody. We review a district court's grant of summary judgment *de novo*, drawing all inferences in favor of the nonmoving parties. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 977 (7th Cir. 2008). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party (Peabody) is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Our task is to determine whether, as a matter of law based on undisputed facts, the Illinois statute of repose bars the Plaintiffs's claims. *Hausman v. Monarch Mach. Tool Co.*, 997 F.2d 351, 353 (7th Cir. 1993).

The Illinois Construction Statute of Repose, entitled "Construction—Design management and supervision," provides that:

> No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of

such act or omission.[2]

735 ILCS 5/13-214(b). Application of § 13-214(b) involves a two-step analysis: (1) whether a coal mine is an "improvement to real property," and (2) whether Peabody engaged in activities that fall within the ambit of § 13-214(b). *Garrison v. Gould*, 36 F.3d 588, 591 (7th Cir. 1994).

## A. Improvement to Real Property

Whether a coal mine constitutes an "improvement" under the Illinois Statute of Repose is a question of law, although resolution of the question is grounded in fact. *Garner v. Kinnear Mfg. Co.,* 37 F.3d 263, 266 (7th Cir. 1994); *St. Louis v. Rockwell Graphic Sys. Inc.*, 153 Ill.2d 1, 178 Ill.Dec. 761, 605 N.E.2d 555 (1992). Because we sit in diversity, we apply Illinois substantive law. *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007). We use a common sense approach, focusing on the ordinary meaning of the statutory language when interpreting the phrase "improvement to real property." *Hillard v. Lummus Co.*, 834 F.2d 1352, 1355 (7th Cir. 1987).

Although Illinois courts have not yet addressed the issue of whether a coal mine constitutes an "improvement to real property" under § 13-214(b), Illinois case law provides us with strong guidance. In *St. Louis v. Rockwell Graphic Systems Inc.*, the Illinois Supreme Court defined "improvement" as "a valuable addition made to property (usually real estate) or an amelioration in its condition,

---

[2] There is no dispute that ten years had passed since the conduct upon which Peabody bases its statute of repose defense occurred.

amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty, or utility or to adapt it for new or further purposes." 178 Ill.Dec. 761, 605 N.E.2d at 556 (citing Black Law's Dictionary 682 (5th ed. 1979)); *see also Hausman*, 997 F.2d at 354 (discussing "improvement to real property" as defined in *St. Louis*). Although the *St. Louis* court held that there was an insufficient factual record to determine whether a printing press was "an improvement to real property," it set forth "relevant criteria" for determining what constitutes an "improvement to real property," such as whether the addition was meant to be permanent or temporary, whether it became an integral component of the overall system, whether the value of the property was increased, and whether the use of the property was enhanced. 178 Ill.Dec. 761, 605 N.E.2d at 556; *see also State Farm Mut. Auto. Ins. Co. v. W.R. Grace & Co.*, 24 F.3d 955, 958 (7th Cir. 1994); *Morietta v. Reese Constr. Co.*, 347 Ill.App.3d 1077, 283 Ill.Dec. 758, 808 N.E.2d 1046, 1050 (2004). The application of § 13-214(b) should focus on the entire construction project and not merely on a single component of the system. *Garrison*, 36 F.3d at 592.

This Court and Illinois courts have addressed whether various products constitute "improvements" under § 13-214 in actions involving personal injury. *See id.* (electrical switch installed as part of electrical switching station is an improvement); *Garner*, 37 F.3d at 267-68 (overhead garage door system was an improvement); *Hausman*, 997 F.2d at 354-55 (anneal line for metal coils is an improvement); *Herriott v. Allied Signal Inc.*, 998 F.2d 487, 490 (7th Cir. 1993) (larry-cars used to transfer coal are improvements); *Hilliard*, 834 F.2d at 1355-56 (screw conveyor is

an improvement); *Morietta*, 283 Ill.Dec. 758, 808 N.E.2d at 1050 (removal and repavement of an existing road is not an improvement); *Billman v. Crown-Trygg Corp.*, 205 Ill.App.3d 916, 150 Ill.Dec. 776, 563 N.E.2d 903, 907 (1990) (construction work at a traffic intersection is an improvement).

Illinois courts have also addressed what constitutes "construction of an improvement to real property" under § 13-214 in actions involving damage to real property. *See Bank of Ravenswood v. City of Chicago*, 307 Ill.App.3d 161, 240 Ill.Dec. 385, 717 N.E.2d 478, 483 (1999) (a subway system is not an improvement); *Zimmer v. Vill. of Willowbrook*, 242 Ill.App.3d 437, 182 Ill.Dec. 840, 610 N.E.2d 709, 716 (1993) (a pond and culvert is an improvement); *Cont'l Ins. Co. v. Walsh Constr. Co. of Illinois*, 171 Ill.App.3d 135, 121 Ill.Dec. 83, 524 N.E.2d 1131, 1135 (1988) (underground sewer system is an improvement).

In a case involving the same mine we discuss here, a federal district court held that a coal mine is an improvement to real property under Illinois law. *Illinois Mine Subsidence Ins. Fund v. Peabody Coal Co.*, 383 F.Supp.2d 1078, 1096 (C.D. Ill. 2005). There, the Fund brought suit as a subrogee of multiple insurance companies (Federated was not one of those companies), and sought damages from Peabody for reinsurance reimbursements it paid for mine subsidence damage claims caused by the Mine. In granting Peabody's motion for summary judgment, the district court found that a "room and pillar" coal mine was an "improvement to real property," and held that the Fund's claims were barred by § 13-214(b). *Id.* at 1096-97.

On this appeal, we address Plaintiffs's arguments that previous case law dictates that any underground activity

that benefits the surface property is not an improvement under § 13-214, and under *Bank of Ravenswood v. City of Chicago*, 307 Ill.App.3d 161, 240 Ill.Dec. 385, 717 N.E.2d 478 (1999), a coal mine is not an improvement because it does not have any relation to the use or enjoyment of the real property located above it.

Plaintiffs argue that any activity, above or below ground, which involves an addition that benefits the surface property, is an "improvement" under § 13-214, and in contrast, any underground activity that does not benefit the surface property is not an "improvement" and the statute of repose does not apply. We find this argument to be without merit. Nothing in the statute of repose indicates that the Illinois legislature intended to distinguish between above-ground activities and below-ground activities in relation to improvements to real property. Moreover, Plaintiffs interject a new "definition" of improvement to real property—whether or not the underground construction "benefits the surface property," one that has no support under Illinois law.

Plaintiffs's reliance on *Ravenswood* is unavailing. In *Ravenswood*, an Illinois appellate court analyzed whether the construction of a subway system was an improvement to real property under § 13-214. Using the relevant criteria in *St. Louis* as a guide, the court focused on whether the construction of the subway system is an integral component of the overall system, and found that a subway system is not an integral part of the function of the residential townhomes and does not enhance the overall value. The court further held that the subway system, unlike a sewer system or construction work on a traffic intersection, does not have any actual relation to the use or enjoyment of the real property located

above it. 240 Ill.Dec. 385, 717 N.E.2d at 483. Plaintiffs therefore argue that while the underground coal mine may have enhanced the ground underneath the Mine, it did not benefit the surface property of the Mine because the Mine has no actual relation to the use or enjoyment of the real property located above it.

Peabody argues that Plaintiffs's reliance on *Ravenswood* is misguided, maintaining that this "renegade" decision is the only Illinois case that suggests that underground construction must relate to the use and enjoyment of the surface property, and that the district court, as well as the court in *Illinois Mine Subsidence Insurance Fund*, 383 F.Supp.2d at 1096-97, found that *Ravenswood* offers no authoritative support for the addition of this requirement of "relation to the use and enjoyment" of the surface property. We tend to agree—the *Ravenswood* analysis of an improvement to real property has not been interpreted by any other Illinois appellate court, therefore we are inclined to follow the vast majority of other Illinois courts' interpretations of what constitutes "improvement" to real property under § 13-214.

Peabody also points to a factually-similar Illinois decision that supports a liberal interpretation of the statute of repose. In *Continental Insurance Co. v. Walsh Construction Co. of Illinois*, defendants excavated the earth to construct a sewer system, which ultimately caused damage to the plaintiffs's building above the surface of the construction. In holding that the creation and the construction of a sophisticated sewer distribution system constitutes an "improvement to real property" under § 13-214, the court found that the construction was an addition, rather then a repair and replacement, which substantially enhanced the value of the property. 121 Ill.Dec. 83, 524 N.E.2d at 1135.

After a review of Illinois law within the context of improvements to real property under § 13-214, we find that a coal mine is an improvement to real property under § 13-214(b). The Mine, particularly the pillars, was intended to be permanent support for the surface above the Mine. There is no doubt that a coal mine is a valuable addition to the real property, hiking up the real estate value of the property and awarding the owners of the property with mineral rights. At the time of the construction and operation of the Mine, it made the property more valuable than it would have been without a mine underneath it. That the Mine is more than a repair or replacement is beyond dispute—it is an addition to the property which did not previously exist. Further, the Mine cost labor and capital to construct, and was constructed to adapt the property for a further purpose—coal mining. We therefore find that a coal mine constitutes an improvement to real property for statute of repose purposes.

### B.   Activities Protected by the Statute

Our next inquiry is whether Peabody falls within the protected class of activities under § 13-214(b). The first clause of the statute places the protected activities in a certain context: "No action based upon tort . . . may be brought against any person for an act or omission of such a person in the design, planning, supervision, observation, or management of *construction*." § 13-214(b) (emphasis added); *see Garrison*, 36 F.3d at 592. The concluding phrase, "of construction," modifies each of the enumerated activities and not merely the final one. *Garrison*, 36 F.3d at 592. The statute of repose was originally enacted to protect "the architect, the engineer, the con-

tractor, anyone who is involved in the planning, supervision, operation or management of construction, or the construction of the improvement to real property." 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 31. It was to provide relief for "professionals who are trying to exercise their sound judgment" in the design and construction of improvements to real property. *Id.* at 35.

The Illinois Supreme Court invalidated the original version of the statute as "special legislation," because it excluded from its protection owners or occupiers of the property on which the building was being built or the improvement was being made. *State Farm*, 24 F.3d at 957 (citing *Skinner v. Anderson*, 38 Ill.2d 455, 231 N.E.2d 588 (1967)). The statute was amended by the Illinois legislature to eliminate the exclusion, and the revised statute was upheld in *People ex. rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 114 Ill.2d 252, 261, 102 Ill.Dec. 412, 500 N.E.2d 34 (1986), where the court found that § 13-214 protects anyone who engages in the enumerated activities, regardless of their status. *Id.; see also Hausman*, 997 F.2d at 354 (under § 13-214, mere labels are not dispositive).

Because the statute was enacted for the express purpose of insulating all participants in the construction process from the onerous task of defending against stale claims, *Wright v. Bd. of Educ.*, 335 Ill.App.3d 948, 269 Ill.Dec. 589, 781 N.E.2d 386, 391 (2002), the plain language of § 13-214(b) reflects that purpose and bars only those claims regarding *construction* of an improvement to real property. *MBA Enterprises, Inc. v. Northern Illinois Gas Co.*, 307 Ill.App.3d 285, 240 Ill.Dec. 500, 717 N.E.2d 849, 852 (1999). Thus, Illinois courts have held that for a defendant to benefit from § 13-214, the legal claims against it must arise out of construction-related activity. *Prate Installations, Inc. v.*

*Thomas*, 363 Ill.App.3d 216, 299 Ill.Dec. 853, 842 N.E.2d 1205, 1208 (2006); *Morietta*, 283 Ill.Dec. 758, 808 N.E.2d at 1049. Where a defendant is not sued for its act or omission in a construction-related activity, § 13-214 does not apply. *Prate Installations Inc.*, 299 Ill.Dec. 853, 842 N.E.2d at 1208; *Krueger v. A.P. Green Refractories Co.*, 283 Ill.App.3d 300, 218 Ill.Dec. 626, 669 N.E.2d 947, 950 (1996); *see also State Farm*, 24 F.3d at 957 (negligent acts or omissions, being remote from building construction, were not the sort of activities that § 13-214 was intended to shield).

This rule carries much weight in the case at bar, for Ambrosia sued Peabody under the theory that Peabody was negligent in failing to provide adequate subjacent support for the surface, and the Fund sued Peabody under the theory that a surface property owner is entitled to subjacent support, and that right is absolute and without condition. Under Illinois law, these claims are appropriate, for subsidence claims are merely actions for the withdrawal of subjacent support. *See Lloyd v. Catlin Coal Co.*, 210 Ill 460, 468, 71 N.E. 335 (1904). It is a general rule that the owner of the surface of land has a right to subjacent support for his land. *Mason v. Peabody Coal Co.*, 320 Ill.App. 350, 51 N.E.2d 285, 286 (1943); *see Wilms v. Jess*, 94 Ill. 464 (1880) (a coal company's liability depends not on fault but arises from its absolute duty to provide the surface with support). Where there has been no release or waiver, this right is absolute and does not depend upon whether the mining is done with the greatest degree of care or in accordance with the most approved system of mining. *Mason*, 320 Ill.App. 350, 51 N.E.2d at 286; *see Tankersley v. Peabody*, 31 Ill.2d 496 (1964) (coal company is liable only for subsidences and the resultant damages due to its own mining operations); *Buis v. Peabody*, 41 Ill.App.2d 317 (1963) (same).

Moreover, under RESTATEMENT (SECOND) TORTS § 820, such suits are also appropriate, in that one who withdraws naturally necessary subjacent support of another's land is subject to liability. If subsidence occurs, the action is complete and the party that withdraws the support is strictly liable. See RESTATEMENT (SECOND) TORTS § 820(1), cmt. g. In this instance, Peabody became liable as soon as it withdrew the natural support for Ambrosia's land.

It is undisputed that Peabody was *not* sued for its acts or omissions related to construction activities. Instead, Peabody was sued in its capacity as owner of the mineral estate at the time of the withdrawal of support. This garners further support for the inapplicability of § 13-214 to the claims against Peabody, because the statute of repose does not apply to suits against a landowner solely as a landowner. *See DeMarco v. Ecklund*, 341 Ill.App.3d 225, 275 Ill.Dec. 173, 792 N.E.2d 404, 406-07 (2003) (a landowner must face suit for an act or omission in a construction-related activity in order for § 13-214(b) to come into play); *Kamp v. Preis*, 332 Ill.App.3d 1115, 266 Ill.Dec. 426, 774 N.E.2d 865, 873 (2002) (same); *MBA Enterprises*, 240 Ill.Dec. 500, 717 N.E.2d at 851 (§ 13-214(b) does not apply to an action against a landowner because action was based on landowner's ongoing duty of care, and not on construction-related activities); *Prochnow v. El Paso Golf Club, Inc.*, 253 Ill.App.3d 387, 192 Ill.Dec. 614, 625 N.E.2d 769, 773 (1993) (the allegations of the complaint were based on the ownership of the property rather than on any of the enumerated activities in § 13-214(b)); *C.S. Johnson Co. v. Champaign Nat'l Bank*, 126 Ill.App.3d 508, 81 Ill.Dec. 663, 467 N.E.2d 363, 365 (1984) (§ 13-214 does not apply to defendants for damage to property where action is based on the defendant's status as a landowner, and not one of the enumerated activities in the statute).

We believe the claims against Peabody have been mischaracterized from the beginning. To the extent the claims are for damages against Peabody for construction-related activities enumerated by § 13-214(b), the statute of repose would apply to bar the claim, because a coal mine is an "improvement to real property" within the meaning of the statute and Illinois case law interpreting it. However, to the extent the claim is one for damages against Peabody as a landowner (which we believe is the case) for withdrawal of subjacent support under Illinois law, as well as withdrawal of subjacent support that is "naturally necessary" for the support of surface property in another's possession under RESTATEMENT (SECOND) OF TORTS § 820, the statute of repose does not apply, because a claim of this sort is not premised upon one of the acts or omissions enumerated in the statute.[3]

The district court below focused on whether the coal mine was an "improvement to real property," in that there was no dispute of fact that the mining affecting the property occurred over forty years prior to the suit. The court, however, failed to address the other requirement for the application of § 13-214—whether Peabody was a party engaged in any of the enumerated activities protected under the statute.

Our *de novo* review is limited to legal issues and conclusions. *West Allis Memorial Hosp., Inc. v. Bowen*, 852 F.2d 251, 258 (7th Cir. 1988). We may decide the merits

---

[3] Reviewing Ambrosia's complaint, the negligence claim against Peabody may also fall under RESTATEMENT (SECOND) OF TORTS § 821, which applies where the withdrawal of subjacent support that is not "naturally necessary," but rather, is necessary to support the surface land *and* its artificial additions.

of legal issues which were not addressed by the district court only when the facts on which those conclusions are based are not in dispute. *Id; see also K and N Engineering, Inc. v. Bulat*, 510 F.3d 1079, 1081 n.2 (9th Cir. 2007) (a court of appeals may exercise its discretion to review issue that had not been raised before district court, where issue involves purely legal question of statutory interpretation and pertinent record has been fully developed); *Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 97 (3d Cir. 2008) (a district court's failure to consider an issue below does not necessarily preclude the Court of Appeals from addressing it; however, it is only appropriate for it to do so when the factual record is developed and the issues present purely legal questions, upon which an appellate court exercises plenary review). Peabody was sued in its capacity as the owner of the Mine, not as a party engaging in construction-related activities. Therefore, we find that, as a matter of law, § 13-214(b) does not bar Plaintiffs's claims against Peabody.

### III.  Conclusion

Because we find that Peabody, sued in its status as a landowner, does not fall within the protection of § 13-214(b) as a matter of law, summary judgment was improper. Accordingly, we reverse the district court's grant of summary judgment and remand for further proceedings not inconsistent with this opinion.

CUDAHY, *Circuit Judge*, concurring. I am pleased to join the excellent majority opinion and particularly its important outcome. The issue resolved here is of more than passing significance because, for all practical purposes, an opposite result would slam the door almost completely on claims for coal mine subsidence in Illinois. Coal mine subsidence is usually a long-term proposition. The subsidence alleged in this case took place forty years after operations at the St. Ellen mine had ceased. *See also Tankersley v. Peabody Coal Co.*, 31 Ill. 2d 496, 202 N.E.2d 498 (1964) (forty years); *Nida v. American Rock Crusher Co.*, 253 Kan. 230, 855 P.2d 81 (1993) (thirty years). The application of a ten-year statute of repose would block recovery for subsidence damage in all but the rare case where collapse follows promptly upon excavation. This would be good news for coal mining companies and bad news for the neighbors of their mines. With an opposite result here, the Illinois Mine Subsidence Insurance Fund might as well go out of business.

Illinois has had a construction statute of repose since 1979. *See* 735 ILCS 5/13-214(b) (2007). Nearly every state in the nation now has a construction statute of repose; many of these statutes contain wording that is similar to the Illinois statute. Yet no court in the nation has ever held that digging a coal mine was an act of "construction" or an "improvement to real property" or anything analogous to those statutory requirements.[1] As far as I can

---

[1] Actually, Peabody made the same argument in another recent case involving subsidence damage over the St. Ellen mine. *See Illinois Mine Subsidence Fund v. Peabody Coal Co.*, 383 F.Supp.2d 1078 (C.D. Ill. 2005). Peabody prevailed in that case and, not

(continued...)

tell, no defendant has even *argued* that a construction statute of repose applied to mining operations—not even in the leading mining jurisdictions of Pennsylvania and West Virginia. It would surely be an ill-starred innovation here to find that what is essentially digging a hole in the ground is an act of "construction of an improvement to real property" controlled by the statute of repose.

## I.

The parties here raised at length, and the majority opinion contains an extended discussion of, the term "improvement to real property," which although relevant is really not central to the present issue. The extraction of the coal is the legal cause of the injury here,[2] and this fact should govern our interpretation of the statute of repose. To benefit from the statute, Peabody must show that Ambrosia's mine subsidence claim (which results from coal removal) arises out of a construction-related activity. *See, e.g.*, *King v. Paul J. Krez Co.*, 323 Ill. App. 3d 532, 538-39, 256 Ill. Dec. 725, 752 N.E.2d 605 (2001); *MBA Enter-*

---

[1] (...continued)
surprisingly, has asked us to apply the rule of res judicata. I would decline to do so, as the majority apparently has, since the application of res judicata in this case would foreclose an important opportunity to reconsider a legal rule of great general concern. *See Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 531 (7th Cir. 1997).

[2] Installing lights and other equipment incidental to mining does not cause subsidence.

*prises, Inc. v. Northern Illinois Gas Co.*, 307 Ill. App. 3d 285, 288, 240 Ill. Dec. 500, 717 N.E.2d 849 (1999); *Krueger v. A.P. Green Refractories Co.*, 283 Ill. App. 3d 300, 304, 218 Ill. Dec. 626, 669 N.E.2d 947 (1996). The requirement of a nexus between the legal claim and the construction-related activity is not simply a judicial gloss; the Illinois statute of repose applies only to an "action . . . *for* an act or omission . . . of construction." 735 ILCS 5/13-214(b) (emphasis added). If the construction-related activity is the sole basis of the legal claim, the statute bars the claim. *See MBA Enterprises*, 307 Ill. App. 3d at 288. If, however, the legal claim is, as here, based on activities unrelated to the construction, the statute does not apply. *Id*.

The purpose of the "improvement to real property" language in the statute is to limit the type of "construction" that the statute contemplates. Thus "construction" is anterior to "improvement"; there must be "construction" before its object, "improvement to real property," is in issue. By referring to "improvement to real property," the statute distinguishes between construction involving *personal property* (not covered) and construction of an improvement to *real property* (covered). But, before the nature of an improvement to real property is an issue, there must be "construction" to create it.

The rule that the legal claim must be based on construction-related activity has an important corollary, one that is dispositive in this case. Illinois courts have been clear, as is the majority opinion, that the statute does not bar claims made against a landowner solely in his or her capacity as landowner, as in subsidence claims. *See Continental Ins. Co. v. Walsh Const. Co. of Illinois*, 171 Ill. App. 3d 135, 139, 121 Ill. Dec. 83, 524 N.E.2d 1131 (1988); *C.S. Johnson Co. v. Champaign Nat. Bank*, 126 Ill. App.

3d 508, 511, 81 Ill. Dec. 663, 467 N.E.2d 363 (1984). One defining characteristic of a suit against a landowner *qua* landowner is that it proceeds on a theory of strict liability as distinguished from a theory of negligence.

Although one may think erroneously of subsidence claims as involving negligence, such suits are actually merely actions for the withdrawal of subjacent support. *See Lloyd v. Caitlin Coal Co.*, 210 Ill. 460, 468, 71 N.E. 335 (1904); RESTATEMENT (SECOND) OF TORTS, § 820(1) (1979). The degree of care used in the withdrawal of support is completely irrelevant; as soon as the owner of a mineral estate withdraws *any* natural support from the surface estate, it becomes subject to liability for such a withdrawal. *See Standard Oil Co. v. Watts*, 17 F.2d 981, 982 (7th Cir. 1927) (applying Illinois law). It is the extraction of coal to create a hole or a void (or a "room") that creates the potential for subsidence and damage. When subsidence occurs, the action is complete and the owner of the mineral estate becomes liable without regard to negligence. *See* RESTATEMENT (SECOND) OF TORTS, § 820(1) cmt. g (1979). If the owner of the mineral estate does not wish to be subject to this ongoing liability, it has only two options: "Furnish[ ] artificial support sufficient to replace the natural support withdrawn" or pray that there is no subsidence. *Id.* This is all well settled. *See Wilms v. Jess*, 94 Ill. 464 (1880); *Buis v. Peabody Coal Co.*, 41 Ill. App. 2d 317, 190 N.E.2d 507 (1963); *Wanless v. Peabody Coal Co.*, 294 Ill. App. 401, 13 N.E.2d 996 (1938); *Treece v. Southern Gem Coal Co.*, 245 Ill. App. 113 (1927).

With this proper backdrop in place, it becomes clear that Ambrosia's mine subsidence claim is based on something other than activity related to construction. Peabody decided to extract coal from below the Ambrosia prop-

erty. It does not claim that it secured a waiver of Ambrosia's right to subjacent support. Under Illinois law, Peabody becomes subject to liability as soon as any natural support for Ambrosia's land is removed. Thus, when Peabody removed its first shovelful of coal, it became subject to liability in the event of a mine subsidence. *See Watts*, 17 F.2d at 982. When the subsidence occurred in 2000, Ambrosia sued Peabody in its capacity as the owner of the mineral estate at the time of the withdrawal of support. This is entirely appropriate under Illinois law. *See Buis*, 41 Ill. App. 2d at 323. Further, it is clear that this is a suit between owners solely as owners; the statute of repose, therefore, does not apply. *See C.S. Johnson Co.*, 126 Ill. App. 3d at 511.

## II.

A room and pillar mine is essentially a hole—an incomplete hole because pillars are left in place to prevent subsidence. One could not argue that the hole (or the "room") has been "constructed"; it is simply the void left after the coal is removed. The pillars are not constructed either; they are simply coal that has been left behind. Even if we were to consider the overall design of the mine, it is simply the absence of the coal that caused the damage, and the effectuation of its removal is not construction. Thus, Peabody has no evidence that it "constructed" anything that caused the subsidence. Even the creation of the pillars, if that were considered "construction," is not relevant since that is certainly not the cause of the subsidence. As has been noted, it is the legal cause of the injury which must meet the requirements of the statute of repose.

Although the matter is not central, Peabody has also not shown that there was an "improvement to real property" here. An improvement implies some kind of addition. See *Calumet Country Club v. Roberts Environmental Control Corp.*, 136 Ill. App. 3d 610, 613, 91 Ill. Dec. 267, 483 N.E.2d 613 (1985). Peabody has argued the factors defining an improvement as set forth in *St. Louis v. Rockwell Graphic Systems, Inc.*, 153 Ill. 2d 1, 178 Ill. Dec. 761, 605 N.E.2d 555 (1992). The application of these factors, however, assumes that an "addition" has occurred or been found. *Id*. at 4. Peabody has stressed that the pillars served an important purpose because they supported the ceiling of the mine. But the pillars merely "replace" the support provided by the preexisting coal or, more literally, merely form a portion of the preexisting coal, the remainder of which has been removed. The pillars of unmined coal are certainly not an addition. Once the coal is removed, the pillars must support *both* the surface above them and the surface above the newly created rooms. The pillars are nothing more than a partial replacement for the support that has been removed. Replacement, however, is not improvement. *See Calumet*, 136 Ill. App. 3d at 613.

## III.

Applying the statute of repose in this case does nothing to further its purpose. Statutes of repose are intended to protect against stale claims. *See Wright v. Board of Educ. of City of Chicago*, 335 Ill. App. 3d 948, 955-56, 269 Ill. Dec. 589, 781 N.E.2d 386 (2002). Peabody argues that this case presents "the very problem the Statute of Repose seeks to avoid" because "the task of locating living witnesses and pertinent documents is virtually impossible." Appellee Br.11. This argument represents a funda-

mental misunderstanding of Illinois mine subsidence law. Ambrosia is under no obligation to show that Peabody breached a duty of care, and any showing by Peabody that it used due care is irrelevant. Put simply, Peabody's actions from 1957 to 1960 are not at issue in this case. Peabody already admits that it extracted coal during that period, thus Peabody is already subject to liability for a subsidence. Peabody's only available defenses are that there was, in fact, no subsidence, or that some other force caused the subsidence. *See Watts*, 17 F.2d at 982. Both of those inquiries are related to the here and now—that is, both relate to the subsidence event that is alleged to have occurred on Ambrosia's property in 2000.

## IV.

I therefore agree with the conclusion reached by the majority and, in general, with its analysis, with emphasis on the matters I have discussed. And I would reiterate my belief in the importance of this issue and its proper resolution.